BRAY & BROTHER, plaintiffs in error, *vs.* JOHN McK. GUNN, defendant in error.

(TRIPPE, Judge, was providentially prevented from presiding in this case.)

1. Where an agent deviated from his instructions, and forthwith informed his principal, and the principal, with full knowledge of the facts, either ratifies the act, in terms, or fails, within a reasonable time, to disapprove, the agent is not liable for the deviation from his instructions.
2. The evidence in this case justifies the verdict.

Principal and agent. New trial. Before Judge STROZER. Randolph Superior Court. May Term, 1874.

Bray & Brother brought assumpsit against Gunn, alleging that he had damaged them $800 00, in this, that on August 19th, 1871, the plaintiffs entrusted to said defendant for collection, a draft on J. T. Brown & Company for $402 00; that

Bray & Brother *vs.* Gunn.

on September 9th, 1871, in violation of written instructions, and to the damage of plaintiffs, he received Kimball money, a worthless currency, in payment of said draft, and released said Brown & Company from liability thereon.   The defendant pleaded the general issue.

The evidence made, in brief, the following case:   On August 19th, 1871, the plaintiffs enclosed to defendant, for collection, the draft in the declaration mentioned, with instructions as follows: "Which please collect and forward in New York exchange, or by express, in funds, as suits you best. Please do your best to collect it for us, but in case they do not pay it, please get them to draw on H. I. Kimball & Company, at thirty days, payable to the City Bank, at Macon, (adding two per cent. to the amount,) and send it to us, unless you want to discount it yourself—if so, you can forward as above, adding two per cent. to the amount, and take off the same."

On August 23d, the defendant answered as follows: "John T. Brown & Company say they will pay your draft between the 1st and 15th of next month.   As this was a debt of Brown, Smith & Company, they want the draft drawn on them as a voucher to the new firm.   Enclosed find draft."

On August 26th, plaintiffs forwarded draft on Brown, Smith & Company, repeating, substantially, the instructions contained in their first letter.

On August 28th, the defendant replied that "John T. Brown & Company say they will pay your draft on Brown, Smith, & Company, between the 1st and 15th of next month *certain,* but will not accept."

On September 9th, the defendent wrote as follows:

"I have to-day collected draft on Brown, Smith & Company,....$402 00
"My commissions.........................................................   2 00

$400 00

"This collection was made in Kimball currency, the best I could do.   I have sent it to Atlanta with instructions to send to you New York exchange."

On September 12th, plaintiffs answered as follows: "We also feel obliged for the collection from Messrs. Brown, Smith & Company, and trust that the New York exchange may be purchased with the Kimball currency at same rate as for currency."

On October 27th, 1871, the plaintiffs wrote as follows: "You will oblige us by remitting the amount of our claim *vs.* John T. Brown & Company, successors to Brown, Smith & Company, collected by you, say $402.00, (less your charges for collection,) in currency, by express, or in New York or Savannah exchange."

On November 1st 1871, the defendant replied thus: "Until I received yours of the 27th ultimo, I was of the opinion you had received proceeds for your Brown, Smith & Company draft or claim. This was collected September 9th, in Kimball currency, and sent to W. H. Tuller, cashier of Atlanta National Bank with instructions to convert into New York exchange and remit to you. But it seems Kimball & Company would not redeem it. I am sorry I changed the claim; but I am honest when I say I would much prefer the Kimball currency to-day to a claim on Brown, Smith & Company, as this firm is notoriously insolvent. I guess you know George W. Smith and perhaps John T. Brown. The Company was James Buchanan, a worthy young man but not worth a dime, who is now in Arkansas. I have some Kimball currency and I am inclined to the opinion it will come up yet. The proceeds of your claim is in the hands of the Atlanta National Bank, to your credit. I think I can buy Brown, Smith & Company's paper with the Kimball currency.

"M. I. Atkins offered to give me back the note for the currency on Kimball. I am sure I meant to carry out your interest in this matter, and did for you precisely what I was doing for myself. As for selling Brown, Smith & Company's goods was something I did very little of, having lost by both Brown and Smith."

On November 4th the plaintiffs answered "In reply, we have to state that having sent you the claim for collection,

Bray & Brother *vs.* Gunn.

and you having reported to us that you had collected it, it will not be expected of us to release you from liability. We still claim that you remit us the money as requested in our last. Of course we prefer that you should not be the loser in the matter, and if the new firm will execute a draft which we will approve, we will release you and look to them."

On February 1st, 1872, plaintiffs again wrote asking a settlement.

On February 5th the defendant replied as follows: "I am sorry there is a misunderstanding about the collection of Brown, Smith & Company. I reported this to you and reported the manner in which the collection was made. It seemed to meet your approval, and you so wrote me. I am sure I had no interest in the Kimball matter, but we were all taking his currency, and I wrote you I had taken it for your claim, which seemed to meet your approval, and I say now it is as good in the shape of Kimball currency as it would be on Brown, Smith & Company. If I felt that I owed this to you, I would certainly pay you. I acted for you precisely as I did for myself, which seemed to meet your approval. If it had not, if you had so expressed yourself, I could have sent you back your note very easily at the time I received your acknowledgment."

William M. Tumlin testified substantially as follows: The firm of Brown, Smith & Company was composed of John T. Brown, George W. Smith and James Buchanan; considered them insolvent about August and September, 1871. The firm of J. T. Brown & Company was solvent; it bought out the railroad contract of Brown, Smith & Company, under H. I. Kimball & Company, and assumed part of their debts, amongst which was the claim of plaintiffs. The money in which said draft was paid (Kimball currency) was current and at par in this community about August and September, 1871. No payment would have been made unless such currency had been taken. Kimball failed in September or October; thinks in the latter month. After that such currency was worthless.

The defendant corroborated Tumlin as to the currency of

the Kimball money at the time the draft was paid. He also testified to other facts covered by the above correspondence.

S. A. McNeal corroborated the preceding witnesses as to the currency of the Kimball money and as to the insolvency of Brown, Smith & Company.

The jury found for the defendant. The plaintiffs moved for a new trial upon the following grounds, to-wit:

1st. Because the verdict was contrary to the law and the evidence.

2d. Because the court erred in charging the jury as follows: "In the ordinary course of business between merchants and their correspondents, it is understood to be the duty of the one party receiving a letter from the other, to answer the same within a reasonable time, and if he does not, it is presumed that he admits the propriety of the acts of his correspondent, and confirms and adopts them. If the principal, having received information by letter from his agent giving him the facts as to his acts, does not, within a reasonable time, express his dissent to the agent, he is deemed to approve his acts, and his silence amounts to a ratification, especially if such silence is calculated to mislead the agent. Ratification arises by implication as well as by the acts of the party. It is not absolutely necessary that there should be any positive or direct confirmation; and for this purpose the acts and conduct of the principal are construed liberally in favor of the agent. Slight circumstances and small matters will sometimes raise the presumption of ratification."

The motion was overruled, and plaintiffs excepted.

JAMES T. FLEWELLEN; H. & I. L. FIELDER, for plaintiffs in error.

A. HOOD, for defendant.

McCAY, Judge.

If an agent, acting in good faith, disobey the instructions of his principal, and promptly imforms the principal of what

he has done, it is the duty of the principal, at the earliest opportunity, to repudiate the act if he disapprove.  Silence in such a case is a ratification : See the case of *McLendon vs. Wilson & Callaway*, 52 *Georgia*, 41, from Troup county.  Taking this correspondence altogether, we think the jury had a right to find that the plaintiffs were satisfied with the act of Gunn in taking the money in the Kimball funds, and that his dissatisfaction is an after-thought in consequence of the failure of Kimball.  The evidence is convincing that if they had promptly notified Gunn of their dissatisfaction, he could have saved himself.  Both the parties here were commercial men, and the rule is a fair and reasonable one that it is the duty of the principal promptly to answer the letters of his agent, and if he do not do so he is presumed to acquiesce in what the agent informs him he has done or proposes to do.

Judgment affirmed.