## H. M. HALLOWAY v. THE ARKANSAS CITY MILLING COMPANY.

No. 15,308.   (93 Pac. 577.)

SYLLABUS BY THE COURT.

1. AGENCY—*Unauthorized Act—Disaffirmance—Ratification.* If an agent to sell goods report to his principal that he has made a sale for a price less than he is authorized to take it is the duty of the principal to examine the report and disaffirm the sale within a reasonable time or he will be held to have ratified it.

2. ———— *Reasonable Time to Disaffirm.* The question of what is a reasonable time is one of fact, and depends upon circumstances. In this case a delay of five months was unreasonable.

3. ———— *Liability of Agent to Principal.* If a sale by an agent at a price below that which the principal has authorized be ratified the agent is not liable to the principal for the difference between the authorized price and that at which the sale was made.

Error from Cowley district court; CARROLL L. SWARTS, judge. Opinion filed January 11, 1908. Affirmed.

*H. S. Rogers,* for plaintiff in error.

*J. Mack Love,* and *C. W. Wright,* for defendant in error.

---

The opinion of the court was delivered by

BURCH, J.: The defendant, who resides at Arkansas City, gratuitously undertook to dispose of a car-load of flour for the plaintiff, who resides at Larned, agreeing to confer with the plaintiff before closing a deal. The flour was in the possession of the United States Indian agent at San Carlos, Ariz. An offer of $2.50 per hundredweight was made for the flour by Brookner & Duncan, of San Carlos. The defendant replied they could have the flour at $2.75 per hundredweight, and requested an answer by telegraph. A copy of the letter to Brookner & Duncan was sent to the plaintiff. Brookner & Duncan telegraphed the defendant they could not use the flour, and the plaintiff was so advised. Some days later the plaintiff wrote the defendant as follows:

"In regard to the San Carlos car will say, while I think it an outrage to sell the flour at the price offered, $2.50, it may be best to do so rather than try to move it. I wish you would proceed to place it and get the matter settled up."

On February 23, 1904, the defendant wrote Brookner & Duncan as follows:

"We received your telegram the other day, saying you could not use the car of flour at $2.75 per bbl. Would say that we are handling this flour for the Keystone Mills of Larned, Kan., who made the shipment, and have no interest in it at present except to try to see that they get a fair price for the flour. The price you offered us of $2.50 would net the mill just about $1 per cwt. for the flour, which was not the cost of the wheat when the flour was made, since which time wheat has advanced about 20c. per bushel, which is equivalent to at least $1 per barrel on flour, and we trust you can see your way clear to handle this flour at $2.75 per barrel, which is very much less than the flour could be made for at this time. Please wire us at our expense if you can use it at $2.75."

On February 29 Brookner & Duncan wired the de-

fendant as follows: "Accept flour at two seventy-five per barrel. Regular terms." On the same day the defendant wrote to Brookner & Duncan as follows: "We have your telegram of to-day, accepting the rejected flour at San Carlos at $2.75 per barrel, and we have wired the Indian agent to deliver the same to you." On the same day the defendant wired the Indian agent to deliver the flour to Brookner & Duncan, and mailed a copy of Brookner & Duncan's telegram, and a copy of the letter to Brookner & Duncan which elicited the telegram, to the plaintiff.

In due course of mail these copies should have been, and it is not disputed were, received by plaintiff on March 1 or March 2. On March 5 the Indian agent wrote to the defendant as follows: "According to request contained in your telegram dated February 29, 1904, I delivered to Brookner & Duncan 29,446 lbs., rejected flour." On March 14, 1904, the plaintiff instructed the defendant to collect from purchasers of rejected flour, including the Indian department, C. F. Weidemeyer and Brookner & Duncan, which it did. About the middle of August, 1904, on a settlement of accounts between the parties, the mistake in selling at a price per barrel instead of at a price per hundred-weight was discovered. The plaintiff sued to recover for the difference, and judgment was rendered against him upon substantially the foregoing facts. It is claimed here that the judgment is erroneous.

That the act of the agent was negligent and wholly unauthorized cannot be questioned, but this fact does not establish liability. The agent was acting for its principal, and immediately notified the principal of its conduct. The principal then had the option of affirming or of repudiating the unauthorized act, and was called upon to do one or the other. Prompt action by the plaintiff might have averted loss. It is not certain but that delivery of the flour might have been prevented. The right to rescind was clear, since the letter to Brookner & Duncan containing the offer at a price

per barrel disclosed upon its face that a mistake had been made, besides affording some notice that the defendant was not a general agent.

It is said the plaintiff did not discover the mistake until months had passed. The agent, however, made a prompt statement of its conduct for the information of its principal, and it was the duty of the principal to examine the report and determine whether or not he was satisfied and would be bound. The law allows a reasonable time for this purpose, but in commercial transactions of this character a brief time is a reasonable time, in the absence of special circumstances extending it. The letter reporting the sale to Brookner & Duncan was indubitably read as early as March 14, and the plaintiff cannot be heard to say that, having examined his agent's report, he did not observe its contents. He had knowledge of the unauthorized sale shortly after it was made. With such knowledge he made no attempt to disavow it, remained silent for some five months, and, according to the record, still has the proceeds in his possession. This being true, he ratified the transaction and cannot now repudiate it. The principles involved are all fundamental in the law of agency.

The judgment of the district court is affirmed.