SMITH v. HUTTON et al.

(Supreme Court, Appellate Division, First Department. June 10, 1910.)

1. BROKERS (§ 38*)—FAILURE TO EXECUTE ORDERS—NEGLIGENCE—EVIDENCE.
    Evidence in an action against brokers for negligence in failing to execute an order for sale of stock *held* sufficient to go to the jury on the question of their having received plaintiff's telegrams in the order they were sent, so as to make them liable.

    [Ed. Note.—For other cases, see Brokers, Cent. Dig. § 34; Dec. Dig. § 38.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. PRINCIPAL AND AGENT (§ 14*)—AGENCY.**

The direction given plaintiff by defendant brokers that he could send any messages to them from another city over the private wire of a certain firm in that city did not make the telegraph operator of such firm, in sending messages from plaintiff to defendants, the agent of defendants, so as to make them liable for any negligence of his in transmission.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 26–33; Dec. Dig. § 14.*]

**3. APPEAL AND ERROR (§ 263*)—NECESSITY OF EXCEPTION TO CHARGE.**

The charge submitting as a question of fact whether defendants' acts made a certain person their agent, when as matter of law they did not, not having been excepted to, may not be complained of.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1516–1532; Dec. Dig. § 263.*]

**4. TRIAL (§ 296*)—INSTRUCTIONS—CURING ERROR.**

Erroneously submitting as a question of fact whether a certain act of defendants made the telegraph operator, who sent messages from plaintiff to defendants, their agent, was harmless; there being no evidence that he transmitted the messages other than in the order in which they were filed, and the jury being directed to find for defendants if they received the second message filed by plaintiff ahead of the first one filed by him.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 705–718; Dec. Dig. § 296.*]

**5. BROKERS (§ 36*)—FAILURE TO EXECUTE ORDERS—RATIFICATION.**

Plaintiff filed a telegram for defendant brokers, instructing them to sell his stock at a certain price. Later he filed another message, instructing them to sell them at a lower price. Afterwards in reply to a telegram from them stating that they received his second message before his first message, and therefore were not at fault in not selling, he wired them to close out his account at their discretion. *Held*, that while, if the statement in their message was true, his subsequent message was a ratification of their failure to sell, notwithstanding his subsequent message added the statement that he felt he was justly entitled to sale at the price given in his second message, such subsequent message was not such a ratification as matter of law if their statement was untrue.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 29, 30; Dec. Dig. § 36.*]

Ingraham, P. J., and Laughlin, J., dissenting.

Appeal from Trial Term, New York County.

Action by John B. Smith against Edward F. Hutton and others, copartners, doing business under the firm name and style of E. F. Hutton & Co. From a judgment on a verdict for plaintiff, and from an order denying a motion for new trial, defendants appeal. Affirmed.

See, also, 134 App. Div. 445, 119 N. Y. Supp. 194.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, CLARKE, and MILLER, JJ.

William F. S. Hart, for appellants.
Lewis H. Freedman, for respondent.

MILLER, J. This is an action to recover damages for the negligence of the defendants, stockbrokers of the city of New York, in failing to execute an order for the sale of stock. The defendants had purchased for the plaintiff 100 shares of Union Pacific stock. The

plaintiff informed the defendants that he was going to Boston, and was told by them that he might send any messages to them over the private wire of .Paine, Webber & Co., stockbrokers of that city. He went to Boston, and on March 25, 1907, the following telegraphic messages were interchanged between the parties to this action over said wire:

(1)

Boston, Mar. 25, 1907.

Mr. De Van.
    E. F. Hutton & Co., N. Y.
    Msg. No. 1 Pls cancel stops and sell my Un. Pac. at 130 $7/8$ and Copper at 90$1/4$ pls. confirm.                            John B. Smith.

(2)

Boston, Mch. 25, 1907.

De Van.
    E. F. Hutton & Co.
    Sell for my account and risk Make limits 129½ and 89 $7/8$ instead of former limits.                                 John B. Smith.

(3)

$3/25$

E. F. Hutton & Co.
    33 & 35 New Street. New York.
De Van                                       Time 10:33.
    What did you do ans qk.
17 Co.                                      Jas. B. Smith.

(4)

Paine, Webber & Co.
    27 State Street
        Private Wire.

Boston, Mar. 25, 1907.

Co.
    J. B. Smith
    We did nothing you cancelled your stops please wire more funds.
                                        Devan.

10:44a

(5)

Boston, Mar. 25, 1907.

b600 11:14a.
    John B. Smith
    Your limits now are 100 ACP 90¼ and 100 U. P. to sell at 130$7/8$ is this not correct you cancelled stops.                  Devan

11:13a

(6)

$3/25$

E. F. Hutton & Co.,
    33 & 35 New Street, New York.
De Van                                   Time 11:37 a. m.
    You are wrong those were my first Lts wired 9:50 a. m. 2nd msg. rec'd in N. Y. 957 gave Lts 129½ and 89$7/8$ Un Pac should have been sold. An error was made. But not mine & I think you allow sale Ans qk.    J. B. Smith.

(7)

Boston, Mar. 25, 1907.

b900
    J. B. Smith
    We regarded all your telegrams in order they came to us. Your msg to make limits came right at opening and other one a minute or so later. The fault is the wire not ours, taking it up in meantime shall we change limits to 129$1/2$ and 89$7/8$ ans qk.                      De Van

12:06p

(8)

Time ³/₂₅, 1:32 p. m.

70 Co.

De Van

Close out the acct at discretion, but feel that I am justly entitled to sale of U P at 129½.        J. B. S.

(9)

Time, ²/₂₈ p. m.

De Van

Please mail statement of acct. to-night care Bright Sears & Co., Exchange Bldg. I assume you have closed out or will on this recovery, please wire reply after 3 am writing.        J. B. S.

The plaintiff, who understood telegraphy, testified that he heard No. 1 transmitted by the operator in the office of Paine, Webber & Co., and that he heard the New York operator "O. K." it at 9:50 a. m., and that 7 minutes later, to wit, at 9:57, he sent No. 2. The stock market opened in New York at 10 o'clock. Union Pacific did not sell as high as 130⅞ on March 25th, but between 10 and 10:25 a. m. there were a number of sales in lots, ranging from 100 to 200 shares, at prices varying from 129½ to 130. Shortly before the closing of the market, the defendants sold 100 shares for the account of the plaintiff for 122½.

On the trial, the defendants were at pains to explain the receipt of the plaintiff's telegram, authorizing them to close out his account at discretion, and in what manner they obeyed it, but they made no attempt to explain when or in what order telegrams 1 and 2 were received by them. They did produce, however, their copy of No. 1, and it bore a significant erasure, to wit, the figures "959a" in typewriting were erased, and in place of them the figures "1002a" were inserted by pencil. The testimony of the plaintiff as to the time when the messages were sent and when he heard the New York operator "O. K." them, the omission of the defendants to explain when and in what order the first two telegrams were received, and to account in any way for the failure to execute the order to sell at 129½, in connection with the significant erasure on their copy of the first telegram, justified the jury in finding that the messages were in fact delivered in the order in which they were sent, and that the mistake occurred in the defendants' office.

The learned trial court distinctly charged the jury that they must find for the defendants in case they found that telegram No. 1 was received by the defendants after the receipt of No. 2. The court also submitted to the jury as a question of fact whether the direction given to the plaintiff by the defendants to communicate with them over the private wire of Paine, Webber & Co. constituted an adoption by the defendants of that method of communication, and thereby made the operator who sent the message the defendants' agent. That was plainly erroneous. The information given the plaintiff that he could communicate with the defendants over the private wire of Paine, Webber & Co. no more constituted the latter the agents of the defendants than a direction to communicate by Postal Telegraph or Western Union would have done. However, the charge was not excepted to, and it is difficult to see how the defendants could have been harmed by

it in view of the explicit charge to find for the defendants in case No. 2 was received ahead of No. 1. Moreover, there is no suggestion in the record that any mistake was made in the Boston office. It is, of course, barely possible that the jury may have been confused by the charge, but counsel did not deem it of sufficient importance to except to it, and the error was peculiarly one which the court should have had an opportunity to correct.

The only other question requiring consideration is that arising upon the defendants' claim of ratification. The court submitted to the jury as a question of fact whether the telegram of the plaintiff, directing the defendants to close out his account at discretion, constituted a ratification by him of the defendants' failure to sell at 129½. It does not seem to me that that telegram is ambiguous. It was a positive direction to close out the account at discretion. If that direction was sent by the plaintiff with full knowledge of all that had occurred, it seems to me that it was an adoption and ratification by him of the acts complained of. If he intended to stand upon his direction to sell at 129½, he had no business to give a direction to defendants to sell for his account, because it was for the defendants to determine for themselves how best they could protect themselves. By giving that direction and thereby inducing the defendants to sell for his account, the plaintiff must be deemed to have ratified what had previously occurred, provided he had full knowledge of it. Buck v. Houghtaling, 110 App. Div. 52, 96 N. Y. Supp. 1034; Gillett v. Whiting, 141 N. Y. 71, 35 N. E. 939, 38 Am. St. Rep. 762. The mere fact that he coupled with a positive direction to sell a claim as to what he felt himself justly entitled to did not in any wise change the positive and unequivocal character of that direction. However, that telegram was sent in answer to a telegram of the defendants, asserting that they received message No. 1 after message No. 2, and were therefore not at fault. In order to find for the plaintiff under the instruction of the court, the jury had to find that that statement was false. It cannot, therefore, be decided as a matter of law that the plaintiff's direction, given in answer to that false statement, constituted a ratification of the defendants' failure to sell, and it follows that there is no exception in the record, which requires a reversal of this judgment.

After a critical examination of the evidence, I am satisfied that the failure to execute the order to sell at 129½ was the defendants' fault, due perhaps to confusion in their office, caused by the condition of the market. For that reason, the verdict is a just one, and should not be disturbed.

Judgment and order should be affirmed, with costs.

CLARKE and SCOTT, JJ., concur.

INGRAHAM, P. J. (dissenting). The defendants were carrying for the plaintiff various stocks upon margin which was nearly exhausted. On March 25, 1907, plaintiff was in Boston, Mass., and in the morning of that day he went to the office of Paine, Webber & Co., who were stockbrokers in that city, and had a special telegraph wire connecting their office with the office of the defendants in the city of

New York. It would seem that the plaintiff, when he first got to the office, telegraphed the defendants to sell his Union Pacific stock at 130⅞, and shortly after sent another telegram instructing them to sell at 129½. Not hearing from them, and at about half past 10, he telegraphed "What did you do. Answer quick," and received in reply a message from the defendants stating that they had done nothing, that plaintiff had canceled his stop order, and asking for more margin. Shortly after the defendants sent another message to plaintiff, stating that his limit was 130⅞ for Union Pacific, and asking him if that was not correct. About half past 11 plaintiff telegraphed defendants that that was wrong; that his first limit wired 10:50 was 130⅞, but his second message gave a limit of 129½; that Union Pacific should have been sold; that an error was made, but it was not plaintiff's, and plaintiff thought defendants should allow sale. Immediately afterwards the defendants replied that they regarded plaintiff's telegrams in the order they came, that the message to make limits came at opening and other message a minute or so later, the fault in the wire not defendants; and "taking it up in meantime shall we change limits to 129½. * * * Ans qk." In answer to this plaintiff telegraphed:

"Close out the acct at discretion, but feel that I am justly entitled to sale of U P at 129½."

And following this was a telegram asking defendants to mail statement of account and saying:

"I assume you have closed out or will on this recovery, please wire reply after 3 am writing."

There is some dispute as to the receipt of these first two telegrams. Plaintiff, however, expressly testified that he sent the telegram fixing the limit at 130⅞ first and the telegram reducing that limit to 129½ a few minutes later; that he understood telegraphy and listened as the operator sent both messages; and that he heard a reply from New York acknowledging receipt of them both in the order he had testified to. Having this personal knowledge that the telegrams had been received in the New York office in the order named, knowing the price at which stocks had sold in New York in the morning, and that Union Pacific had sold at a price above 129½ after his message had been received in New York, informed of the fact that the defendants had not acted upon that despatch and sold the stock at 129½ because of a claim that the first message fixing the price at 130⅞ had been received after the message fixing the price at 129½, and that they had been unable to sell the stock at 130⅞, plaintiff nevertheless telegraphed the defendants to sell at their discretion, and followed it up with a telegram stating that he assumed they had sold on the recovery in the afternoon. It seems to me that in this situation the defendants were justified in accepting the plaintiff's order to sell this stock in the afternoon. Plaintiff knew the order in which the telegrams had been sent, and had been received in New York. It is true he knew that the defendants had claimed that they had received the telegrams so that the one fixing the price at 130⅞ was received subsequent to the one fixing it at 129½, and that they had acted upon that fact as to the order in which the telegrams had been received. It was a day of excite-

ment in the Stock Exchange. These telegrams were coming in constantly, and there is no evidence to justify a finding that the defendants did not in good faith suppose that the first telegram had been sent after the second. The mistake was one of either the telegraph operator in New York or some of defendants' employés. But there is nothing to justify a suspicion of bad faith, or that the defendants were not actually doing the best they could to protect the plaintiff. The plaintiff, knowing these facts, could not have been deceived by any representation that the defendants had made as to the order in which these telegrams had been received. He acquiesced in the failure of the defendants to fill his order, and then sent a telegram in answer to a call for instructions to sell his stock at discretion. He certainly cannot complain because the defendants obeyed this order. If he had intended then, to hold the defendants responsible for a failure to sell at 129½, he should have distinctly notified the defendants to that effect, so as to allow the defendants to protect themselves. Certainly, if the stock had subsequently advanced in price, the defendants not having sold the stock, the plaintiff could have claimed the benefit of that advance. When the defendants telegraphed for instructions, plaintiff then had to elect whether he would insist upon a sale at 129½ in pursuance of the telegram that he had sent, and that he knew had been received by the defendants after the first telegram fixing the limit at 130⅞. But that he did not do. On the contrary, he accepted that situation, treated the stock as still belonging to him, gave an order directing its sale, which order the defendants complied with; and I think it is too late for the plaintiff to hold the defendants responsible for the failure to sell the stock as required by the second telegram. It is not a question of ratification based upon an incomplete knowledge of the facts, but rather the question of an election based upon knowledge of the facts. Plaintiff knew the telegram had been received by defendants. He knew, it is true, that the defendants claimed that the telegrams had been received in the inverse order; but with this knowledge, without being at all deceived by any misstatement of any fact by the defendants, he ordered the defendants to sell the stock, which order they obeyed, and of that sale the plaintiff has the benefit.

It is conceded by the prevailing opinion that, if this telegram directing the defendants to close out his account was with full knowledge of all that had occurred, it would have been an adoption and ratification by him of the acts complained of. It seems to me that is just what happened. The plaintiff knew the order in which the telegrams had been sent and the order in which they had been received in New York. He was not deceived, and does not pretend to have been deceived by the statements in the defendants' telegrams that there had been some mistake about the delivery of the telegrams. With this knowledge the plaintiff deliberately accepted the fact that he still owned the stock and gave directions as to its sale. It was then too late for him to object. It was a question of law for the court, and not for the jury, and I think for this reason the verdict cannot be sustained.

LAUGHLIN, J., concurs.