ALFRED R. SCHMID, Respondent, *v.* IDA L. DUVAL, as Executrix, etc., of HORACE C. DUVAL, Deceased, and Others, Appellants.

First Department, March 24, 1922.

Conversion — action against brokers for conversion of stock of customer — defense that customer had not paid his account with brokers — dispute as to claim of brokers that they had purchased certain other stock which transaction customer claimed he repudiated — instructions — court should have charged that repudiation nearly one year after customer had knowledge of broker's claim, was not, as matter of law, within reasonable time.

In an action against a brokerage firm for the conversion of stock deposited with them by a customer on a margin account, wherein the defense was that the customer had not paid his account, it appeared that there was a dispute as to the amount of the customer's account arising out of an alleged order by the customer for the purchase of certain other stock by the brokers in November, 1916. The customer claimed that the alleged purchase of such stock by the brokers, subject to the terms and conditions of a certain syndicate agreement, was not a fulfillment of his order and that he repudiated the transaction and requested the item to be eliminated from his account. There was a conflict in the evidence as to any repudiation by the customer prior to October 2, 1917, it being conceded that on said date there was a repudiation. It was undisputed that the customer, as early as December 21 or 22, 1916, had full knowledge of the claim of the brokers that they had been authorized to obtain for him and had procured for him an agreement to participate in an underwriting syndicate, which action they treated as a purchase of stock for his account, and that he knew the full nature and scope of the transaction.

*Held*, that it was reversible error for the court to refuse to charge the jury that if they found that the customer deferred his definite repudiation of the brokers' action in including him in the syndicate under writing until October, 1917, he did not, as matter of law, act with reasonable promptness and that their verdict must be for the defendants.

APPEAL by the defendants, Ida L. DuVal and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 15th day of June, 1921, upon the verdict of a jury, and also from an order entered in said clerk's office on the 14th day of June, 1921, denying defendants' motion for a new trial made upon the minutes.

*Wilson, Barker & Wager* [*Frank Barker* of counsel], for the appellants.

*John Burlinson Coleman* of counsel, for the respondent.

LAUGHLIN, J.:

This action was brought against the members of the stock brokerage firm of H. C. DuVal & Co. for the conversion of 100 shares of the preferred stock of the South Porto Rico Sugar Company, which they held as margin for a speculative account which they were carrying for the plaintiff. Pending the appeal, Horace

C. DuVal, one of the defendants, died and his executrix was duly substituted in his place.

Plaintiff alleged that on the 24th day of December, 1917, defendants were carrying for his account 100 shares of said preferred stock; that there was then due and owing from him to them, in accordance with the terms of the agreement between them $130.11, and he duly tendered that amount in cash and demanded the delivery of the stock; but that the defendants refused the tender and demand, and converted the stock to their own use, to his damage in the sum of $10,000, for which amount, with interest and costs, he demanded judgment. Defendants admitted the tender, but denied that it represented the amount then due and owing to them, and alleged that the amount so owing exceeded $9,000. They further allege that in the month of November, 1916, the Chalmers Motor Corporation was incorporated under the laws of New York, and certain bankers agreed to purchase 264,000 of its 600,000 shares of capital stock; and that a syndicate was organized to acquire the stock from the bankers at $31 per share, and each subscriber thereto agreed to take the number of shares set opposite his signature and to pay to the bankers therefor in cash $31 per share when and as called for by them; and that it was agreed that the subscribers should share in the profits of the syndicate in the proportion of their respective subscriptions, and should be obligated in like proportions for losses, but no subscriber was to be liable beyond the full payment of his subscription; and that the bankers should be the sole managers of the syndicate with authority to sell the stock and to charge the syndicate fifty cents per share for all stock so sold; and that the syndicate agreement, unless sooner terminated, should remain in force until the 1st of March, 1917, with the privilege to the bankers to extend it sixty days, which they exercised; that one of the subscribers to the syndicate offered to allow the customers of the defendants to participate through him and his subscription, and to subscribe for stock, and that this was made known to the plaintiff, who authorized the defendants to subscribe for 300 shares, which they did for his account and risk; and that thereafter and during the same month there was allotted to the various subscribers to the syndicate agreement the full number of shares subscribed by them, and full payment therefor was required; and thereupon the defendants, for the account and risk of the plaintiff through said original subscriber to the syndicate agreement, paid the full subscription price of $9,300 for the 300 shares subscribed for by the plaintiff, and the plaintiff became the owner thereof, subject to the terms and conditions of the syndicate agreement; and that defendants charged

the plaintiff's account with the purchase price thereof and a commission of $37.50, which was a reasonable charge, and so thereafter carried the transaction; and that consequently, when the plaintiff made the tender and demand as alleged in the complaint, there was due and owing from him to the defendants the sum of $9,632.52 with certain interest, which amount and interest remains wholly unpaid. Defendants also pleaded as a separate defense that on or about the 1st of December, 1916, after they had so charged the plaintiff's account with the purchase price of the Chalmers Motor Corporation stock and commissions, they duly rendered to the plaintiff a statement of the account, showing that he was charged with the transaction concerning the Chalmers Motor Corporation stock; and that he duly accepted and approved the account, which thereupon became an account stated between them; and that thereafter on or about the first day of each succeeding month until the 2d of October, 1917, they rendered a like statement to the plaintiff, showing the balance owing to them; and on or about the 14th of January, 1917, they received a dividend of $225 on the stock for the account of the plaintiff and duly credited the same on his account; and that the statements of the account thereafter rendered by them to him showed such credit; and that he received and approved all of said accounts, and each of them constituted an account stated; and that the plaintiff did not attempt to disclaim or repudiate the Chalmers Motor stock transaction until on or about the 2d of October, 1917.

The sole controversy between the parties concerning the state of the plaintiff's account with the brokers is with respect to whether his account was properly charged with the purchase price of the Chalmers Motor Corporation stock and the commissions, and, if not so properly charged originally, whether he ratified it, for it is conceded that, if the defendants improperly charged his account with the purchase price of the Chalmers Motor Corporation stock and the commission and he did not subsequently ratify such charges, he tendered the balance owing to the brokers, and was entitled to recover the value, which was stipulated, of the 100 shares of the South Porto Rico Sugar Company stock.

On a former trial the complaint was dismissed at the close of the evidence, but the judgment was reversed by this court without opinion on the ground that the case should have been submitted to the jury (195 App. Div. 937). On the trial now under review questions of fact arose on conflicting evidence and were submitted to the jury with respect to whether the plaintiff authorized or ratified the acts of the brokers in acquiring the Chalmers Motor Corporation stock for him and charging it and the commission

thereon to his account. The verdict of the jury could be sustained were it not for an error by the court with respect to instructing the jury concerning ratification.

Plaintiff testified, in effect, that Mr. Steiner, the office manager of the brokers, early in October, 1916, informed him that the brokers were to participate in an underwriting syndicate for the purchase of Chalmers Motor Corporation stock, and that, if he so desired, they would, as a matter of courtesy and favor, give him a participation or sell him 500 shares of the stock " out of the participation," and that they were to receive it at $31 a share, and that it was to be offered to the public at $35 per share, and that he took the matter under consideration, and on or about the thirty-first of October Steiner asked him to decide whether he wanted to buy some of the stock which the brokers were to receive from the syndicate, and explained to him what a syndicate was, and he asked Steiner whether the stock would be delivered to him and was informed that, when the syndicate delivered it to them, they would send him a slip stating that they had received the stock, and that he was at liberty to sell it; that a few days thereafter he authorized Steiner to buy 300 shares for him at $31 per share, and Steiner said that they would only charge him a regular broker's commission; that on the twenty-second of November he received a notice from the brokers, on the customary brokers' form of notice, to the effect that they had " received " for his account and risk " 300 Chalmers Motors New from Chalmers Motors Syndicate " at $31 per share, amounting to $9,300, and stating that their commission would be $37.50, making a total of $9,337.50; that he was summoned to the office of the brokers on the twenty-first of December and Steiner then asked him for more margin; and in response to his request for an outline of his holdings he received a statement including an item of the 300 shares of the Chalmers Motor Corporation stock; and he directed Steiner to sell that stock and some others, but Steiner replied that they could not sell it for the reason that it was tied up in the underwriting agreement, and he protested that he had nothing to do with the underwriting agreement, and asserted that the defendants had sold him the stock and he wanted them to sell it for him, and that when Steiner persisted in refusing to sell it he demanded that it be eliminated from his account, but Steiner said they could not do that, and after some discussion the matter was dropped for the time being; that he did not bring the matter to the attention of any member of the firm, for the reason that he thought Steiner might see the justice of his demand and change his mind; that in January, 1917, he received a credit slip for a

dividend of $225 on the stock and called on Steiner and stated, in substance, that, since they had not bought the stock for him as agreed, he was not entitled to the dividend, and again requested that this item be eliminated from his account, and made a like request early in March; and that on each occasion his request was denied, but he still thought that the defendants might ultimately accede to his demands; that he was informed that there had been an extension of the underwriting agreement, but he did not authorize it and never was shown and never signed any underwriting agreement. He admitted on cross-examination that he received from the brokers a written statement of his account the first of each month, showing that they claimed to be carrying this stock for his account; and that, notwithstanding the refusal of the defendants to eliminate this item from the account, he continued to buy and sell securities in large amounts through them until March 21, 1917, from which time on, with the exception of one purchase on the fifth of July, the transactions consisted of sales, as he was liquidating his account, which was quite large; that on the 21st or 22d of December, 1916, he was informed by Steiner that the defendants had not purchased the stock outright for him, but had undertaken to put him into an underwriting syndicate, and that at no time did Steiner yield to his request that this item be eliminated from his account, and that he never presented the matter to a member of the firm; that in May, 1917, his father, who had been financing him, desired to know what stocks owned by him and carried in his account with the defendants paid dividends, and on the statement rendered to him by the defendants on the first of May he marked opposite the items which of the stocks paid dividends and so marked opposite the Chalmers item in pencil, "Pays dividends;" that under date of September sixth he received a letter from the defendants referring to the fact that they were carrying 300 shares of Chalmers Motor Corporation stock for his account, stating that the company was readjusting its capital, and that, upon payment of $1,000 per 100 shares the stockholders would be entitled to receive certain specified securities, one of which consisted of first mortgage six per cent notes, and that stockholders who did not subscribe to the notes would not participate in the advantages, "but their stock remains undisturbed," and advising "taking advantage of the above proposition," and asking for an early reply as the subscriptions had to be made up before September tenth. That letter contains a notation in blue pencil made by him at the foot thereof as follows: "Sept. 10, 1917. Refused Participation."

In the body of the letter the words "remains undisturbed" were underscored in pencil, and plaintiff testified that this might

have been done by him or his father and that, on receiving that letter, he consulted his attorney, who wrote the defendants under date of October 2, 1917, stating his claim with respect to the Chalmers stock and referring to their statement of account rendered on October first, showing a balance of $50,926.20 owing to them, and claiming that it was incorrect in that the Chalmers stock transaction should be eliminated; and that accompanied by his partner at the time the letter was delivered to the defendants or after it had been received by them, he tendered the balance owing as claimed by him and demanded the other securities which they were carrying for his account, and the demand was refused, and that thereafter his account was liquidated to such extent that on the 24th of December, 1917, when the demand, on which the action was predicated was made, aside from the Chalmers stock transaction, they were only carrying for his account the 100 shares of the South Porto Rico Sugar Company stock.

Defendants conceded that they never actually received the stock, and that at the time they reported having received it they had only received participation certificates for the 300 shares. In behalf of the defendants, Steiner testified that the plaintiff had requested to be afforded an opportunity of participating in an underwriting agreement, and that he informed plaintiff that the defendants had been given the privilege through a friend, who was one of the subscribers, to allow their customers to participate in his subscription, and that the plaintiff expressed a desire so to participate to the extent of 500 shares, but that they were only able to allow him to participate to the extent of 300, and that this was satisfactory to him; that the syndicate enterprise was a failure and the defendants were obliged to take up for the plaintiff and other customers 1,300 shares of the stock, in return for which they received participation certificates; and, on receiving the certificates, they gave plaintiff the notice under date of November 21, 1916, as already stated, and he afterwards called at the office, and it was explained to him that the syndicate had been unable to dispose of the stock, and that he expressed regret but made no complaint and never complained or repudiated the transaction or asked to have it eliminated from his account until the formal demand of October 2, 1917. Testimony was also given by the defendants Horace C. and Clive L. DuVal, tending to corroborate the testimony of Steiner and particularly that there was no attempted repudiation of the transaction by the plaintiff until the formal demand on or about the second of October.

In submitting the issues of fact as to whether the plaintiff authorized the defendants to acquire for him a participation interest

in the syndicate to the extent of 300 shares, and whether, if not, he ratified their acts in so doing, the court instructed the jury generally that plaintiff claimed that the agreement was that defendants were to buy the stock for him, and that he repudiated the transaction when he discovered that he was to participate in the underwriting syndicate, and that this was denied by the defendants, who claimed that the plaintiff did not repudiate the transaction until sometime after his alleged assent was given, and then instructed the jury that it was the duty of the plaintiff to definitely accept or reject the transaction with reasonable promptness after acquiring knowledge of the material facts and circumstances relating thereto; that if they found he did not so act with reasonable promptness their verdict should be for the defendants; that reasonable promptness depended entirely upon the facts and circumstances as the jury found them, and that no formal action on the part of the plaintiff was necessary to constitute an acceptance and ratification, and that his intention to ratify might be implied from his course of conduct subsequent to his acquisition of full knowledge of the transaction; that the burden rested on the defendants to prove ratification by a fair preponderance of the evidence, and that the ratification involved depended on whether or not plaintiff had full knowledge of all the material facts, and whether there was an intention to ratify, and that the burden was upon the defendants to establish these propositions by a fair preponderance of the evidence, and, unless they sustained that burden, the jury should decide the question of ratification in favor of the plaintiff. The court did not instruct the jury that any particular period of time would constitute a reasonable time within which the plaintiff was required to accept or reject the transaction, if not originally authorized by him. Counsel for the defendants requested the court to instruct the jury as follows: " If you find that the plaintiff deferred his definite repudiation and rejection of the defendants' action in including him in the syndicate underwriting until October, 1917, I charge you as a matter of law that he did not act with reasonable promptness and that your verdict must be for the defendants."

The court refused so to charge and the defendants excepted. I am of opinion that the defendants were entitled to have the jury instructed as requested. It is to be borne in mind that the undisputed evidence shows that on the 21st or 22d of December, 1916, the plaintiff acquired full knowledge with respect to the defendants' claim that they had been authorized to obtain for him and had procured for him an agreement to participate in the underwriting syndicate to the extent of 300 shares of the stock, and that the stock was to be managed by the syndicate and could not be sold

by him during the period during which its management was in the hands of the syndicate managers. On the testimony presented in behalf of the defendants the jury would have been authorized in finding in accordance with this request that he made no definite repudiation of the transaction until the second of October thereafter. If those were the facts, he retained the right in the meantime to accept the benefit of the transaction, if the market price of the securities rendered it to his advantage so to do. The proposition of law involved is unquestionably sound. It was not, however, read in the presence of the jury and the jurors, therefore, were not influenced by the refusal of the court to charge it. If it were perfectly clear that the verdict shows that the jury believed the testimony of the plaintiff rather than that introduced in behalf of the defendants, it might be sustained, for he testified that he only authorized a purchase outright of the stock, and that, when he found that this had not been done, he repudiated the transaction at once. The court, however, did not instruct the jury that the question of ratification depended upon the credibility of the plaintiff or of the witnesses called by the defendants, but discussed the legal proposition with respect to a reasonable time which the plaintiff was entitled to take before deciding to accept or reject the transaction if unauthorized, and repeatedly stated, in effect, that the plaintiff was not required to act until he acquired full knowledge, and they must find that he intended after obtaining full knowledge to ratify the transaction. This, I think, left the period within which the plaintiff was called upon to act quite open to speculation and for aught that appears the jury may have been of the opinion that he was warranted in thinking that the defendants, although they gave him no encouragement, would ultimately eliminate the item from his account, or that he was not called upon to take a definite stand in the matter until he was fully informed with respect to the action of the syndicate managers by the notice of September sixth concerning a reorganization. On December twenty-first or twenty-second, of the year before, he acquired the essential information, and all that he desired, to enable him to decide and upon which he was required to act in accepting or rejecting a participation in the syndicate. The court either deemed the request unsound, or that the general instructions given were sufficient. The fact that the plaintiff continued to conduct large transactions through the defendants for many months thereafter tends to support their claim, and other evidence to which reference has been made points in the same direction, and would have warranted a verdict in favor of the defendants. I think that it cannot be said on this record that the verdict may not have been

rendered on the theory that the formal repudiation by the plaintiff on the second of October was within a reasonable time, and since clearly, as matter of law, that was not a reasonable time, the jury should have been instructed as requested.

It follows that the judgment and order should be reversed and a new trial granted, with costs to appellants to abide the event.

CLARKE, P. J., DOWLING, PAGE and MERRELL, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to appellants to abide event.