SULLIVAN *v.* BENNETT.

1. Trial—Determination of Issue of Fact Omitted from Special Question—Court Rules.

Under Court Rule No. 37, § 7 (1931), issue of fact omitted from special question submitted to jury was determined in favor of plaintiff by court's entry of judgment for plaintiff on jury's special verdict; such finding being on "waiver of jury *pro tanto* and consent that such omitted fact be determined by court."

2. Appeal and Error—Review of Issue of Fact Omitted from Special Question.

Question of ratification, question of fact omitted from special question submitted to jury and determined by court's entry of judgment on special verdict, is reviewable by Supreme Court on facts as well as law, where appellant's notice of

As to ratification of unauthorized act of agent by silence, see annotation in L. R. A. 1918C, 222.

As to ratification of broker's acts, see annotation in 44 L. R. A. 618.

appeal raised point that judgment is against preponderance of evidence (Court Rule No. 37, § 7, and Court Rule No. 75 [1931]).

3. PRINCIPAL AND AGENT—RATIFICATION.

Acts of agent departing from instructions are deemed ratified by principal unless repudiated by him within reasonable time after knowledge of departure.

4. SAME.

Ratification does not necessarily rest on circumstances affirmatively showing intention to ratify, but results also from application of rule of law that affirmative repudiation is necessary to disaffirmance.

5. SAME—PRINCIPAL'S DUTY TO PROMPTLY AFFIRM OR REPUDIATE AGENT'S DEPARTURE FROM INSTRUCTIONS.

Principal, being entitled to profits made on his business by agent, may not speculate at expense of agent, but must declare his position on knowledge of agent's departure from instructions, and promptly affirm or repudiate such departure, especially where delay may prevent agent from minimizing his damages.

6. SAME—FAILURE TO REPUDIATE BROKER'S ACTION AMOUNTED TO RATIFICATION.

Where undisputed facts show that client, on learning of broker's failure to obey instructions and sell stock, failed to repudiate such conduct, his failure to do so amounted to ratification of broker's action as matter of law.

Appeal from Wayne; Ferguson (Homer), J. Submitted October 28, 1932. (Docket No. 72, Calendar No. 36,785.) Decided January 3, 1933.

Assumpsit by Patrick H. Sullivan against Edward S. Bennett and others, individually and as partners doing stock brokerage business as Bennett-Smith & Company, for failure to sell stock as instructed. Special verdict and judgment for plaintiff. Defendants appeal. Reversed, without a new trial.

*Angell, Turner, Dyer & Meek,* for plaintiff.

*Beaumont, Smith & Harris* (*Thomas B. Moore* and *Richard W. Larwin,* of counsel), for defendants.

FEAD, J. Plaintiff had judgment, after special verdict of a jury under Court Rule No. 37, § 7 (1931), for damages for failure of defendants, stock-brokers, to sell his stock at once on his orders given October 14, and 17, 1929.

Plaintiff had purchased various stocks through defendants, certain of which were held by the latter on margin account. Plaintiff testified that on October 14th he was in defendants' office, defendant Charles L. Smith told him his account would soon need more margin, he ordered all his stock sold and the account closed, Smith tried to dissuade him, but he insisted on sale, and Smith agreed to sell. Defendants deny that plaintiff ordered them to sell.

October 16th, defendants wrote plaintiff for $4,000 margin. He knew this letter meant that his order to sell had not been carried out. He called at defendants' office on October 17th and left 10 more shares of stock, worth $670. He testified he ordered the 10 shares sold. Defendants claimed they were deposited as margin. Plaintiff said reference was made at that time to the previous order to sell, and that Mr. Smith replied that if prices had gone up instead of down plaintiff would have thanked him for not selling. Plaintiff's most specific testimony regarding reference to instructions on the 14th was:

"*Q.* What did you say at that time?

"*A.* I asked why my instructions of the 14th had not been carried out.

"*Q.* Did you give new instructions to have the stock sold at that time?

"*A.* Why, I asked him why, surely I did. * * *

"*Q.* You told him what—I mean Mr. Charles L. Smith?

"*A.* Why, I told him that the stock should have been sold, as I instructed him to do on the 14th.

"*Q.* What else did you say, if anything?

"*A.* Nothing more, I guess.

"*Q.* Nothing more. Now, was that the last conversation that you had with Mr. Smith?

"*A.* Yes.

"*Q.* Or any member of the firm of Bennett, Smith & Company?

"*A.* That is the last I recall."

Smith testified it was agreed that certain specified stock should be sold to provide margins, but with the idea of continuing the account, if possible.

Plaintiff knew that sales of stock were followed by letters of notification to the customers. He received letters from defendants dated October 17th and 18th regarding sales of stock which Smith said was agreed to be first sold to cover margins; October 23d, demanding $2,500 on account of weakness of the market; October 24th, notice that defendants must hear from plaintiff the next morning in regard to his account; October 28th, two letters, October 29th, three letters, and October 31st, one letter, giving notice of sales of stock. The 10 shares deposited October 17th were sold October 29th. The letters covered all plaintiff's stock except 100 shares, apparently unsalable and still held for him by them.

The sales left plaintiff owing defendants slightly over $2,000, which was reduced some $200 by dividends in November. A friend of plaintiff had guaranteed his account to the amount of $2,000 and transfer was made November 22d, which closed the account except that defendants still had the 100 shares of unsalable stock. December 1st plaintiff received a statement for November, showing ·his

account balanced, with the 100 shares of stock on hand. Later, his attorneys consulted defendants, and this action was begun March 28, 1930. From October 17th until after December 1st plaintiff had no communication with defendants by way of protest, claim, inquiry, or otherwise.

The court submitted four special questions to the jury, two of which dealt with values, and the others were whether plaintiff instructed defendants to sell his stock holdings on October 14th, and whether plaintiff instructed defendants to sell the 10 shares of stock deposited October 17th. The jury answered these questions in the affirmative, and found the values in answering the other two questions. No general verdict was taken.

The issue of ratification of defendants' failure to sell as ordered was raised at the trial, although called "waiver," but was not submitted as a question of fact to the jury. Plaintiff claims it was a question of fact. Under Court Rule No. 37, § 7 (1931), the court, by entering judgment for plaintiff, found such issue of fact, if any, in favor of plaintiff; the finding was on "waiver of a jury trial *pro tanto* and a consent that such omitted fact be determined by the court." The issue of fact, on proper assignment of error, is reviewable by this court under Court Rule No. 75 (1931). In the notice of appeal, defendants raised the point that the judgment is against the preponderance of the evidence. This presents ratification for review by this court upon the facts as well as the law.

The question is whether plaintiff ratified defendants' failure to sell his stock under the orders of October 14th and 17th by failing to unequivocally repudiate it and stand upon the repudiation.

The general relationship of principal and agent, with its reciprocal incidents of good faith, candor

and confidence, the not unusual departure by agents from instructions to the benefit of their principals, and the sometime misunderstanding of directions, make it a reasonable rule that the acts of an agent shall be deemed ratified by the principal unless repudiated by him within a reasonable time after knowledge of the departure. Story on Agency (9th Ed.), § 258, succinctly states the rule:

"If the principal having received information, by a letter from his agent, of his acts, touching the business of his principal, does not, within a reasonable time, express his dissent to the agent, he is deemed to approve his acts, and his silence amounts to a ratification of them."

See, also, *Norris* v. *Cook,* 1 Curt. C. C. 464 (18 Fed. Cas. No. 10,305, p. 318).

As to stock transactions, Meyer, Law of Stockbrokers and Stock Exchanges, p. 410, says:

"The first principle of ratification in stockbrokerage transactions is that a customer who wishes to take advantage of his broker's wrongful act must repudiate that act. If he does not he is deemed to have ratified it. He may not merely sit by and do nothing, but is bound at the risk of the loss of his claim affirmatively to indicate his repudiation. * * *

"This doctrine is not unfair, for the customer should not have the privilege of withholding approval or disapproval until the market has taken a turn for better or for worse, and then assuming the position which turns out the more profitable. To accord the customer that privilege would enable him, to speculate at the broker's expense. Moreover, the broker should not be placed in a position where he does not know whether his act will be affirmed or disaffirmed, and therefore cannot act intelligently to minimize his own loss before the market has undergone too great a change."

See, also, Rapalje on Real Estate Brokers, § 51; 1 Meecham on Agency (2d Ed.), § 459; L. R. A. 1918 C, 222, note.

The texts cite a large number of authorities. The following are noted merely as illustrative: *Law* v. *Cross,* 1 Black (66 U. S.), 533; *Royal Bank of Canada* v. *Universal Export Corp.* (C. C. A.), 10 Fed. (2d) 669; *First National Bank* v. *Biddle* (C. C. A.), 22 Fed. (2d) 11; *Smith* v. *Hutton,* 138 App. Div. 859 (123 N. Y. Supp. 656); *Rock* v. *Carpenter,* 110 N. Y. Supp. 261; *Schmid* v. *DuVal,* 200 App. Div. 514 (193 N. Y. Supp. 278); *Bray & Brother* v. *Gunn,* 53 Ga. 144; *Halloway* v. *Arkansas City Milling Co.,* 77 Kan. 76 (93 Pac. 577).

The repudiation must not be uncertain or equivocal. Meyer, Law of Stockbrokers & Stock Exchanges, p. 413, states:

"In order that a repudiation may be effective to preserve the customer's rights it must indicate an intention to disaffirm. It is insufficient if it merely expresses the opinion or assumes the position that the transaction was unauthorized. An unauthorized act may be ratified and adopted, and an assertion that the act was wrongful is not an assertion that it is repudiated. Accordingly, it has been held that a repudiation has not been effected by a statement that the sale was unauthorized; or by a claim of what the customer felt himself justly entitled to; or by an explanation of the reasons why the purchase made by the broker should not have been made."

See, also, *Leviten* v. *Bickley, Mandeville & Wimple, Inc.* (C. C. A.), 35 Fed. (2d) 825.

Thus, it appears that, in such cases, ratification does not rest upon circumstances affirmatively showing intention to ratify, but results from application

of a rule of law that affirmative repudiation is necessary to disaffirmance. The basic reason is that the principal, being entitled to the profits made on his business by the agent, may not speculate at the expense of the agent, but must declare his position on knowledge of the facts and promptly where delay may prevent the agent from minimizing his damages. As ratification also involves knowledge of the facts by the principal and reasonable time to repudiate, the issue may be one of fact or law, according to the circumstances.

Under the undisputed facts and as a matter of law, plaintiff ratified the failure of defendants to sell under the order of October 14th, by failing to repudiate their conduct after knowledge of the breach of his instructions, and by the affirmative act of depositing more stock to the account, whether for sale or margin, thereby consenting to the continuance of the account as it was conducted. The reference on October 17th to the order of the 14th was not a repudiation of the breach of instructions.

As to the 10 shares, plaintiff knew two days after he deposited them that defendants were selling some of his stock but not the 10 shares. Later he knew the account was being carried as formerly, because he received demands for margin, and, therefore, knew the 10 shares were being carried in the account. He knew the market was falling rapidly, and that if defendants had to account for the stock as of the 17th the loss was increasing. He had not repudiated disobedience of his orders of the 14th. These facts raised the duty of immediate repudiation if he had intended to order the 10 shares sold at once. However, while plaintiff testified that he told defendant Smith to sell the 10 shares, he did not directly say that he ordered immediate sale. The

physical facts support defendants' contention that it was agreed that certain other stocks should be sold first with the idea of covering the margin and in the hope that the market would permit the account to stand. Both as a matter of law and of fact, we hold that plaintiff ratified defendants' conduct by failing to repudiate it.

Judgment reversed, without new trial, and with costs to defendants.

CLARK, SHARPE, NORTH, and BUTZEL, JJ., concurred with FEAD, J. McDONALD, C. J., and POTTER and WIEST, JJ., concurred in the result.