## BENNETT v. HOLLAND FURNACE CO.
### No. 53.

Circuit Court of Appeals, Second Circuit.
Dec. 16, 1940.

Hamilton Hicks, of New York City, for plaintiff.

Wiman & Braham, of New York City (William S. O'Connor and Joseph G. Wi-

man, both of New York City, of counsel), for defendant.

Before SWAN, CHASE, and CLARK, Circuit Judges.

## CHASE, Circuit Judge.

This suit, originally brought in the New York Supreme Court, County of Westchester, was removed to the District Court for the Southern District of New York and there tried to a jury. A verdict for the plaintiff was set aside on motion and a new trial granted. At the retrial, the plaintiff moved to dismiss the defendant's counterclaim. The motion was granted and defendant did not appeal. At the close of all the evidence, the defendant moved to dismiss the complaint upon the ground that no jury question was presented. This motion was granted and a final judgment for the defendant was entered. The plaintiff has appealed.

The action was brought to recover for an alleged conversion of stock in the defendant corporation which was purchased and sold under the following circumstances:

On February 19, 1931, when the plaintiff was employed by the defendant as assistant sales manager at its office in Holland, Mich., the defendant made a written offer to all its employees to the effect that it would buy at the market and hold for any employee, at the purchase price plus brokerage charges incurred, two shares of Holland Furnace Company stock for "every share of our stock now owned by you which you will assign to us". Any employee accepting the offer was given the right to pay for the stock in three annual installments of one-third of the price beginning June 1, 1932. Interest on the unpaid balance was to be paid the defendant at the rate of six per cent per annum to be deducted quarterly out of dividends on the stock and the remainder of such dividends was to be credited on the employee's debt. Title to stock deposited with the defendant and title to stock purchased by the defendant was to be in the Holland Furnace Company until the stock had been fully paid for, or had been sold, and if an employee for whom stock had been purchased was in default after any payment became due the defendant had the right to sell "all of the stock held by us in your behalf" at the market; to apply the proceeds toward the payment of the employee's debt; and was bound to account to the employee for any surplus.

The plaintiff, on February 26, 1931, gave the defendant a written application for the purchase of 535 shares of such stock under the plan above outlined and then transferred to the defendant 301 shares of the stock which he then owned to be held as collateral security. On March 10, 1931, the defendant acknowledged its acceptance of the plaintiff's application and advised him that the stock he ordered had been purchased for $16,665.25.

The plaintiff paid the installment due on June 1, 1932, but failed to pay the one which became due of June 1, 1933, and thereafter continued in default. The alleged conversion of the stock occurred when the defendant, on July 9, 1935, sold the stock, in the open market but without notice to the plaintiff, for $8,818.26 and applied the proceeds to the plaintiff's indebtedness. That left a book balance on the transaction of $1,455.71 due to the defendant.

On July 15, 1935, the plaintiff, unaware that the stock had been sold, wrote the defendant for a statement of the account saying that he had noticed that the price was going up and that "I wish to ask your advice as to how high the stock is likely to go during the next few months". The defendant replied on July 17, 1935, that it was unable to state how high the stock would go and further, "In regards to your account, we recently sold your stock and applied the proceeds to your account. 800 shares were sold at 10¾ and 36 shares at 10⅝. The proceeds from the sale of this stock did not entirely pay the interest when computed to the date the stock was sold. Due to the fact that your account was large and the interest was accumulating without any payments received thereon, we had to dispose of your collateral when it practically reached the balancing point." On September 10, 1935, the plaintiff wrote the defendant as follows: "Sometime ago you advised that you had sold my Holland Furnace stock and applied the proceeds against my indebtedness to the Company, thereby wiping out such indebtedness. For my records, will you please advise to whom you sold this stock, giving me the certificate numbers, the date sold, and the price on each share". The defendant replied on September 14, 1935, that the 836 shares of stock had been sold on July 12, 1935, through brokers named, for $8,818.26 but did not give the certificate numbers. A statement of the account was enclosed which was balanced by an entry showing

the remainder of the debt assumed by the defendant. Further correspondence, the last of which was about the middle of February, 1937, had to do with information concerning the purchase and sale of the stock which the plaintiff desired for income tax purposes. After that the parties had no communication with each other until this suit was brought on July 24, 1937.

The defendant made a mistake in reporting the date of its sale of the stock as July 12, 1935, as it actually sold it three days before. The plaintiff did not know this until this case first went to trial in 1938. The sale price was, however, a little less than the market price quoted for July 12th but the plaintiff made no protest to the defendant before bringing suit either as to the sale or the price obtained.

The trial judge, evidently being of the opinion that the defendant acted as the plaintiff's agent in selling the stock, took the view that the plaintiff's failure to repudiate the sale within a reasonable time after he had such information concerning it as the defendant gave him amounted to a ratification of the sale as a matter of law and left no question for the jury.

■■ We think it was error to decide the case on agency principles. The relationship of the parties is to be determined from their intent as shown by the proposal the defendant made and the plaintiff accepted. The gist of that was that defendant would buy and hold for the plaintiff to pay for in three installments two shares of stock for each share of his own which the plaintiff transferred to the defendant to hold as security for the debt together with the stock so purchased. The title to all the stock was to be in the defendant until the installments were paid or the stock was sold and the defendant might sell whenever the plaintiff was in default. Where stock is purchased by a broker with his own funds to hold for his customer until it is paid for often the situation is one of principal and agent where the customer, as the principal, must repudiate unauthorized acts of the agent within a reasonable time after knowledge of them or be deemed to have ratified them. Sullivan v. Bennett, 261 Mich. 232, 246 N.W. 90, 87 A.L.R. 791; Law v. Cross, 66 U.S. 533, 1 Black 533, 17 L.Ed 185; Leviten v. Bickley, Mandeville & Wimple, 2 Cir., 35 F.2d 825.

■■ This plaintiff, however, not only had stock bought for him at the defendant's cost but deposited his own stock with the defendant as additional security for the debt created. This stock so deposited was clearly pledged to secure the debt as the contract shows that title was transferred only for that purpose and the parties assumed the relationship of pledgor and pledgee. The contract was made in Michigan and was to be performed in Michigan. The rights of the parties to it are to be determined under the laws of Michigan. Dale v. Pattison, 234 U.S. 399, 34 S.Ct. 785, 58 L.Ed. 1370, 52 L.R.A.,N.S., 754. Taney v. Pennsylvania Nat. Bank, 232 U.S. 174, 34 S.Ct. 288, 58 L.Ed. 558.

■ The law of Michigan required the defendant to give the plaintiff notice of the sale. Secs. 9561–9563 of the Michigan Compiled Laws of 1929. By selling without notice, the defendant was guilty of conversion and the plaintiff was under no duty to repudiate the sale at the risk, otherwise, of being charged with ratification by his silence. He was after the sale merely one whose property had been wrongfully converted to the use of another and was entitled to stand upon whatever might be his legal rights. Sheffield Car Co. v. Hydraulic Car Co., 171 Mich. 423, 137 N.W. 305, Ann.Cas.1914B, 984; Brightson v. Claflin, 225 N.Y. 469, 122 N.E. 458.

■ While it was, for the reasons stated, error to hold as a matter of law that there was no issue for the jury, what we have said is not to be taken as finally disposing of the issue of ratification. Though he might remain silent without loss of rights, the plaintiff may have ratified the sale by accepting the benefit of the proceeds after knowledge that the stock had been unlawfully sold by the defendant. He did receive a statement from the defendant which showed his account in balance and that was in part due to his having been credited in that statement with the proceeds of the sale of the stock. Whether or not he did accept that credit, with full knowledge of all essential facts, may be decisive upon a new trial but that is a question of fact to be dealt with as the evidence then introduced may require.

Judgment reversed, and cause remanded for a new trial.

CLARK, Circuit Judge, concurs in the result with memorandum.

CLARK, Circuit Judge (concurring in the result).

I have inclined to the view, held by the court below, that under controlling Michigan precedents, ratification was so clear here as to leave no issue for the jury. Yet that is so much a matter of weighing the plaintiff's acts in pais that I am prepared to yield my views and to concur in the conclusion which would call for submission of these acts to the eyes of a jury. But I cannot agree that the plaintiff obtains some advantage here over that possessed by a broker's customer under the leading Michigan case of ratification, Sullivan v. Bennett, 261 Mich. 232, 246 N.W. 90, 87 A.L.R. 791. There a broker was held the agent of his customer in making sale and it was held that the customer as the principal would ratify unless he repudiated within a reasonable time after knowledge. I think an attempted distinction to the advantage of a broker is quite unsound; here, indeed, the contract conferred express powers on the defendant at least equal to those implied in a broker. That there was a pledge here—as is in substantial effect the situation where a broker buys stock for account and holds it as collateral—seems beside the point. Hence here we should look no further for ratification than as Sullivan v. Bennett, supra, defines it; whether a different rule applies to nonagency cases is not our present affair.