SELECTED INVESTMENTS CO v. BROWN.

1. APPEAL AND ERROR—TRIAL WITHOUT JURY—ERRONEOUS STRIKING
   OF TESTIMONY—CROSS-EXAMINATION UNDER STATUTE.
   In action of assumpsit, tried before court without a jury, striking
   of answer on cross-examination under statute of plaintiff's
   agent through whom stock transaction had been handled, *held*,
   not prejudicial where trial court, in passing upon motion for
   new trial, stated he assumed ruling was erroneous and that
   he considered the answer of the witness as if it had not been
   stricken (3 Comp. Laws 1929, § 14220).

2. PRINCIPAL AND AGENT—AUTHORITY—EVIDENCE.
   The extent of an agent's authority cannot be presumed from
   the impression of party who dealt with such agent but the
   party who relies on an alleged agency must show what author-
   ity the agent actually had.

3. BAILMENT—BROKERS—PRINCIPAL AND AGENT—CONFIRMATION.
   In action of assumpsit arising out of a bailment of stock, find-
   ing of trial court that person through whom defendant and
   plaintiff negotiated was an intermediary or negotiator rather
   than a general agent *held*, not error, where every negotiation
   between the intermediary and defendant was followed by
   plaintiff's own letters of confirmation.

4. SAME—SALES—NOTICE OF CHANGE OF RELATION—SUFFICIENCY.
   Notice by defendant of his decision to treat transaction relative
   to shares of stock as a sale thereafter which had previously
   been a bailment *held*, to have been insufficient to effect such
   change where notice was expressly given to intermediary sub-
   ject to plaintiff's ultimate approval.

5. SAME—NOTICE OF FORECLOSURE.
   In action of assumpsit for return of deposit in connection with
   bailment of shares of stock, brought after term of bailment
   had finally expired, plaintiff *held*, entitled to reasonable notice
   of foreclosure of its interests in view of character of negotia-
   tions previously had and then pending.

6. SAME—RATIFICATION OF TERMINATION—REPUDIATION—ESTOPPEL—
   DAMAGES—RECORD.

   Failure of trial court to find that plaintiff bailee of shares of
   stock ratified defendant bailor's treatment of bailment as at
   an end and that sale to plaintiff had been effected *held*, not
   error under record failing to show how much time elapsed
   between defendant's notice of foreclosure and plaintiff's re-
   pudiation, or showing other circumstances from which to infer
   acquiescence or ratification should estop plaintiff, or showing
   that defendant had been damaged.

7. SAME—SUFFICIENCY OF TENDER OF EQUIVALENT STOCK.

   Under bailment of shares of stock, not for safekeeping, it was
   unnecessary that identical certificates be restored, a tender of
   equivalent stock being sufficient.

Appeal from Berrien; Evans (Fremont), J. Sub-
mitted January 3, 1939. (Docket No. 4, Calendar
No. 40,230.) Decided April 4, 1939.

Assumpsit by Selected Investments Company, an
Illinois corporation, against Rolland J. Brown, for
sums due on a stock transaction. Judgment for
plaintiff. Defendant appeals. Affirmed.

*Hill, Hamblen, Essery & Lewis,* for plaintiff.

*Ross H. Lamb,* for defendant.

BUTZEL, C. J. On October 6, 1936, the Selected
Investments Company, an Illinois corporation with
offices in Chicago, plaintiff herein, borrowed 500
shares of National Gas & Electric Company stock
from Rolland J. Brown, defendant, in accordance
with negotiations that were had through Lewis W.
Lawrence. Lawrence signed a receipt for the stock
using the words, "for the company," after his name.
It stated that the stock was to be borrowed until de-
livery of common stock, presently to be issued as a
result of the Public Gas & Coke reorganization, but

in any event for not over 60 days from date. Plaintiff was to deposit with defendant cash totaling the current bid on the shares as of that day, plus ½ point margin, and also to put up additional cash for each ½ point rise in the market price of the stock. Plaintiff was to return to defendant 500 shares of the stock within 60 days and to receive the amount of cash that it deposited with defendant less ¼ point, which was to be considered as rental for the stock. On October 8, 1936, plaintiff wrote to defendant that in accordance with the request of Mr. L. W. Lawrence, it was pleased to acknowledge receipt of the 500 shares and that the regular receipt had been sent him. The letter set forth substantially the terms of the receipt signed by Lawrence and stated that the plaintiff was sending defendant an additional amount to equal the bid price at the time of 7¼ plus ½ point for defendant's protection. On October 13, 1936, plaintiff's president wrote to defendant that as per the request of Mr. L. W. Lawrence, they were supplementing the terms set forth in their letter by agreeing that for each ½ point rise in the market price of this stock, they were to send defendant a check representing the amount of such rise in the market price and that, therefore, they were forwarding their check for $250, and if this did not meet with defendant's approval, he was requested to advise plaintiff through Mr. Lawrence.

On November 9, 1936, Lawrence, on behalf of plaintiff, signed a receipt for an additional 450 shares of the same stock, which were loaned plaintiff on terms similar to those that governed the loan of the 500 shares. A few days later, plaintiff wrote to defendant that the official receipt covering this item had been mailed and reiterated the terms of the bailment. In both Lawrence's receipt and the letter,

it was stated that the 450 shares were to be returned to defendant on or before February 1, 1937.

On January 25, 1937, plaintiff sent defendant a check for $843.75 as additional security for the loan of the 450 shares. On the 29th of January, in acknowledging this check, defendant asked for an additional sum as security for the 500 shares previously loaned as well as for an additional ¼ point for rental on those shares. Plaintiff sent defendant $1,125 on February 2d, which represented a ¼ point charge for ''an additional period of 60 days from date hereof under our original agreement.'' The check also represented additional security due because of the increased market price of the stock.

Receipt of this check was acknowledged by defendant in a letter dated February 10, 1937, which called attention to the fact that the ''original agreement'' was only for 60 days and that the ¼ point compensation was rental only to December 8, 1936. Defendant also claimed that no rental had been paid on the 500 shares since that date and that the additional ¼ point that he had requested in a previous conversation with Lawrence was for rental from December 8th to February 1, 1937, at which time ''the rental of the 450 shares also expired.'' Defendant concluded this letter as follows:

''If you care to have this stock for an additional 60 days I feel it is worth an additional ¼ point. Will you kindly check your letters and advise me?''

On February 13, 1937, plaintiff acknowledged receipt of defendant's letter and stated that it would make a thorough study of its files and bring the entire situation up to date, and that defendant would hear from it within the next few days. Defendant claims that after writing the letter of February 10th, he changed his mind on the 13th, and decided that

since plaintiff had not paid all due rentals, he would charge the cash fund deposited by plaintiff with the purchase price of the stock, and consider the stock transferred to plaintiff. This plan he disclosed to Mr. Lawrence in a telephone conversation February 13th, indicating at the time that he was charging appellee with the price of the stock, thus saving it a broker's fee. In a letter sent plaintiff February 16th, defendant indicated in summary form that a total of $9,750 had been received from plaintiff in the form of cash funds deposited; that a sum of $475 for rental was to be deducted from this credit, which left a balance of $9,275 in plaintiff's favor. The value of the 950 shares was given as $8,550, and for the difference between these two figures, $725, defendant inclosed his check. Some time later, just how long the record does not show, this check and a number of shares of stock were tendered through Lawrence to defendant, but the tender was refused. Plaintiff thereafter brought this suit to recover the entire amount of the fund retained by defendant. The trial judge held that plaintiff was entitled to the $725 and to a judgment for the additional amount of $8,852 together with interest, and that upon satisfaction of the judgment, defendant was entitled to a return of the certificates for the shares loaned which had been tendered to defendant in open court.

On appeal defendant claims that he acted strictly within his rights under the rental agreements; that plaintiff was notified of his contemplated action by reason of the telephone conversation between Lawrence and defendant on February 13th; and that in the face of such notice, plaintiff acquiesced in the disposition made so that it is in no position to complain.

Thus the case hinges somewhat on the existence of the authority of Lawrence, who was called by defendant for cross-examination under the statute.* Lawrence testified that he resided in Benton Harbor and was in the securities business. After stating that he was employed by plaintiff, he was asked whether he was their agent in Michigan. He replied: "I was one of them." His answer was objected to and stricken by the court who heard the case without a jury. Defendant's counsel thereupon asked no further questions. Defendant claims that the court should have permitted Lawrence's statement that he was an agent of plaintiff in Michigan to stand. Even if this contention is correct, appellant was not prejudiced since the court, in passing on the motion for new trial, assumed that the ruling was erroneous, and in denying that motion, stated that he considered the answer of the witness as if it had not been stricken.

Moreover, the court correctly indicated that the scope of the agency was in no manner shown. The extent of the agent's authority cannot be presumed from defendant's impression of that authority; it was incumbent upon defendant who relied on the alleged agency to show what authority Lawrence actually had. *Clark* v. *Dillman,* 108 Mich. 625. The evidence, rather than establishing a general authority in Lawrence, showed on the contrary that plaintiff had followed up every negotiation between Lawrence and defendant with its own letters of confirmation. Plaintiff referred to "our agreement of October 8th," the date of the first confirmatory letter and not of the receipt given by Lawrence. Similarly, it instructed defendant to "advise us through Mr. Lawrence." We cannot say that the

* See 3 Comp. Laws 1929, § 14220 (Stat. Ann. § 27.915).—Reporter.

trial court erred in finding Lawrence more of an intermediary or negotiator than a general agent.

Peculiarly, there is nothing to support defendant's theory that his telephone conversation with Lawrence on February 13th constituted notice to plaintiff of the proposed transfer of the stock, or an agreement in behalf of plaintiff to allow defendant to proceed as outlined. When defendant told Lawrence that he was closing the transaction, he requested him to notify plaintiff to that effect, and, "if there was any question about it," to notify defendant in turn. By express terms any agreement which might have been reached between appellant and Lawrence was made subject to appellee's ultimate approval.

Before such approval could reasonably have been given, defendant proceeded to sell plaintiff out on February 16th. The indefensibility of such conduct is further aggravated when it is recalled that on February 10, 1937, defendant had offered to rent the 500 shares for an additional 60-day period and had asked plaintiff to examine its records and "advise," which plaintiff, in its letter of February 13th, had promised to do. Thus, within six days from February 10th, during which a legal holiday and a Sunday intervened, while Lawrence was supposed to be seeking plaintiff's approval of the alleged agreement he had made with defendant, and while plaintiff was investigating its records, its interest was foreclosed without further notice or warning.

Defendant was asked, if plaintiff had tendered back his check for $725 and the 950 shares of stock, whether he would have accepted the tender. The record is not clear as to the answer as the judge injected another question. Irrespective of whether the negative reply of the witness was made in answer to the question of counsel or the court, de-

fendant did testify that after February 16th the account between himself and plaintiff was a closed issue as far as he was concerned.

In the light of all this, we are asked to hold that plaintiff was not entitled to any notice of the foreclosure of its interests because the stock was to be returned at a fixed time under the rental agreements. The difficulty in the case arises largely from the very incompleteness of these agreements, no provision having been made in them as to what was to be done if the stock were not returned within the 60 days or during the period of renewal. But even if the original agreements be interpreted to impose on plaintiff an obligation to return the stock at the appointed time, the subsequent conduct of the parties indicates clearly that no such strict observance was insisted upon. When the original rental period for the 500 shares had expired, defendant did not make timely demand for the stock but carelessly allowed negotiations to be prolonged so that it was not until the middle of January that a renewal was finally effected. In his letter of January 29, 1937, defendant acknowledged receipt of a check for margin on the 450 shares, requested additional margin on the 500 shares, but gave no intimation that the agreements were to be considered terminated a few days later. Finally, as late as February 10, 1937, after the agreements had in strict terms expired, defendant was still offering plaintiff the opportunity to retain the stock for an additional term on payment of a small sum.

Our attention is not called to any similar case. We are asked to use the analogy of the statutory requirements for the sale of pledged stock, 2 Comp. Laws 1929, § 9561 (Stat. Ann. § 19.411), where proper notice, et cetera, is required. The general

bailment principle that the bailee must first offer to return the subject matter is also invoked. We, however, prefer to base our decision upon the fact that after defendant's indication that he would be willing to extend the time for the return of the stock for a proper consideration, and after his request that plaintiff should check its records, he could not suddenly sell out the stock without making a reasonable demand and giving plaintiff an opportunity to preserve the fund deposited by restoring defendant's shares.

We are somewhat concerned with appellant's argument that plaintiff acquiesced in the disposition defendant had attempted. It is claimed that once plaintiff had notice by defendant's letter of February 16th, it was under a duty to speak, and its failure to object precludes its present claim. There is nothing in the record to show when plaintiff first registered its protest save the defendant's testimony that it was not for a "considerable time." Even assuming that the unwarranted act of defendant was such as could have been silently ratified or acquiesced in, we cannot find such acquiescence when suggested solely by a mere conclusion of the defendant. Within the rule of *Sullivan* v. *Bennett,* 261 Mich. 232 (87 A. L. R. 791), plaintiff had a reasonable time in which to repudiate the transaction. Without evidence of the actual time which elapsed, without knowledge of surrounding circumstances, with nothing but a passing comment of defendant from which to judge, we cannot say that the trial court should have found a ratification of the transaction by plaintiff. It is also significant that defendant testified that he considered the transaction closed after the 16th of February. He does not show that he was in any way damaged by any delay

on the part of plaintiff in not immediately protesting against defendant's unauthorized conduct in summarily and without notice closing the transaction.

Appellant also questions the validity of plaintiff's tender, arguing that the identical shares of stock should have been restored to him. The certificates tendered in court were dated March 9, 1937, and were obviously not the same certificates which had been loaned. While the purpose of the rental agreements was not shown, it is evident that the certificates were not obtained by plaintiff for safekeeping but for its own uses. In such case it was not necessary that the identical certificates be restored. A tender of equivalent stock was sufficient. *Vogler* v. *Gustin,* 257 Mich. 475.

The judgment is affirmed, with costs to plaintiff.

BUSHNELL, SHARPE, POTTER, CHANDLER, and MC-ALLISTER, JJ., concurred with BUTZEL, C. J. WIEST and NORTH, JJ., concurred in the result.