MAZANEC *v.* GOGEBIC TIMBER & LUMBER CO.

1. PRINCIPAL AND AGENT—POWER OF AGENT TO BIND PRINCIPAL.
   An agent cannot bind his principal except within the scope of the agency.

2. CORPORATIONS—AUTHORITY OF RESIDENT MANAGER—BURDEN OF PROOF—INSTRUCTIONS.
   In insurance agent's action against foreign corporation for workmen's compensation insurance premiums, based on alleged agreement he had made with defendant's resident manager, plaintiff had the burden of establishing such manager's authority to bind defendant in such a contract and court's instruction to such effect was proper.

Liability of principal to third person on contract made by agent with apparent authority to do so, see 1 Restatement, Agency, §§ 140, 159.

3. Same—Authority of Resident Manager—Saw Mills—Logs
and Logging.

In the absence of testimony to the contrary, it can be assumed
that the resident manager of a foreign corporation at location
in this State where it operated a saw mill and bought logs
for a veneer company had power to bind defendant as to any
and all matters normally pertaining to such business.

4. Same—Authority of Resident Manager—Workmen's Compensation Insurance for Third Party's Employees.

Whether or not the resident manager of a foreign corporation
had the authority to bind it for payment of premiums for
workmen's compensation insurance for employees of a third
party from whom it purchased logs used in business of operating saw mill or for sale to veneer company was a matter requiring direct proof and not for inference from the manager's
position with the company.

Appeal from Gogebic; Landers (Thomas J.), J.
Submitted October 11, 1945. (Docket No. 10, Calendar No. 43,015.) Decided December 3, 1945.

Assumpsit by George L. Mazanec against Gogebic
Timber & Lumber Company, a Wisconsin corporation, for insurance premiums. Verdict and judgment
for plaintiff. Defendant appeals. Reversed and
new trial granted.

*William F. Pellow,* for plaintiff.

*Ivan D. Wright,* for defendant.

North, J. Plaintiff, in a suit in assumpsit tried by
jury, had verdict and judgment. Defendant has appealed. As reasons in support of its appeal defendant asserts that the oral contract or agreement upon
which plaintiff based his right to recover was void
under the statute of frauds, that the verdict was not
sustained by the evidence, that the verdict was
"against the great preponderance of the evidence,"

and that the trial court was in error in denying defendant's motion for a new trial.

Plaintiff was an insurance agent, and in September, 1942, he delivered to Kernan Kelly a policy dated August 12, 1942, which covered the workmen's compensation liability of the employees of a copartnership which consisted of Kernan Kelly and Raymond Campbell. However, because the partnership continued for but a short period after the date of the policy and because the parties concerned viewed the policy as having been thereon assigned to Kelly who continued the partnership business, we shall herein consider it as though issued in the first instance to Kelly individually. Kelly was in the logging business operating near Watersmeet in Upper Michigan, and while so operating he sold to the Gogebic Timber & Lumber Company logs and other forest products from lands which he owned or from lands on which he had the right to operate. Kelly did not do any logging on lands belonging to the defendant company nor did that company assist him in buying any lands on which he operated. This company was a Wisconsin corporation. It was authorized to do business in Michigan and operated a sawmill at Watersmeet. Defendant was also engaged in other business such as buying logs for a veneer company in Mellen, Wisconsin. One Earl C. Poundstone was the resident manager of defendant's business carried on at Watersmeet. He was not an officer of the company. He testified he "was manager of its operations in Gogebic county" and "in complete charge of the company's operations in this county."

There are three counts in plaintiff's declaration. In the first count plaintiff in substance alleges that in September, 1942, at the request of Kelly and the defendant corporation plaintiff sold and delivered to

them the workmen's compensation insurance policy the premiums on which are the subject matter of this suit; and plaintiff alleges "That defendants, jointly and severally, promised to pay plaintiff all premiums due and to become due on said" policy and that on September 15, 1942, defendant corporation did pay to plaintiff, as part payment of premiums on the policy, $347; but defendants, jointly and severally, declined to make further payments, whereupon this suit was brought to recover the unpaid portion of the premiums which accrued during the life of the policy, the same amounting to $819.69.

In the second count, plaintiff bases his right of action upon allegations that Kelly approached plaintiff in an effort to procure workmen's compensation insurance, but plaintiff refused to sell such insurance to Kelly individually; that thereupon various interviews were had with defendant's agent and manager, Poundstone, concerning the sale of such insurance to cover the compensation risk of Kelly's employees, and thereafter during the first week of September, 1942, Poundstone instructed plaintiff to deliver such policy of insurance to Kelly and "did then and there promise plaintiff that defendant corporation would pay all premiums while such compensation insurance was in full force and effect;" and relying upon such promise plaintiff did then and there deliver to Kelly a workmen's compensation insurance policy issued by the Hartford Accident & Indemnity Company, August 12, 1942, but prior to such delivery "it was distinctly understood and agreed between plaintiff and corporate defendant that said policy of insurance was being sold and delivered entirely on the credit and promise of defendant corporation, and that defendant corporation would pay plaintiff all premiums due, or to become due, on such workmen's compensation insurance policy." Further, in the

second count it is alleged that as part payment on the premium then due and on premiums to become due the defendant corporation on September 15, 1942, remitted to plaintiff $347; but because of refusal to pay subsequently accruing premiums this suit was brought to recover from the corporation such unpaid balance in the amount of $819.69.

The third count, in effect, is in the form of the common counts, alleging liability "respectively" of both Kelly and the defendant corporation.

By its answer the defendant corporation denied any and all liability and gave notice of special defenses, among which was that the contract alleged by plaintiff was void under the statute of frauds.* The day previous to the trial plaintiff filed a discontinuance as to defendant Kelly. As hereinbefore noted, the trial by jury resulted in verdict and judgment in favor of plaintiff. The defendant corporation both at the close of plaintiff's proofs and again at the close of all the proofs moved for a directed verdict. The ruling thereon was reserved, and after verdict motion for judgment *non obstante veredicto* made by defendant was denied.

Much of the briefs is devoted to appellant's contention that the verdict rendered in plaintiff's favor is not supported by the evidence. While it cannot be said appellant's contention in this respect is not wholly without merit, we prefer to base decision on the ground hereinafter considered.

It conclusively appears from this record that plaintiff's alleged right of recovery is based solely upon an agreement which plaintiff claims was made between him and Poundstone. The latter as defendant's resident manager at Watersmeet was merely an agent of defendant; and it is elementary that as

---

* 3 Comp. Laws 1929, § 13417 (Stat. Ann. § 26.922).—Reporter.

such agent he could not bind his principal except within the scope of his agency. There is no testimony in this record which would justify the conclusion that Poundstone had any power to bind defendant by any agreement except such as was within the scope of his authority as resident manager of defendant. The burden of establishing such authority was on plaintiff. *Goodspeed* v. *MacNaughton, Greenawalt & Co.,* 288 Mich. 1, and *Selected Investments Co.* v. *Brown,* 288 Mich. 383. And aside from this, when defendant sought to introduce evidence having a bearing upon the scope of Poundstone's agency, plaintiff's objection thereto was sustained. For example, the following appears in the record of Poundstone's testimony:

"*Q.* Do you have authority to loan the company's credit?

"*A.* No, sir.

"*Mr. Pellow:* That is objected to as an improper question and is a question of fact for the jury. This witness cannot give his conclusions on that.

"*The Court:* Yes, I think it is self-serving."

Notwithstanding the above ruling and the absence of testimony of Poundstone's agency being sufficiently broad to justify recovery by plaintiff, the trial court in charging the jury properly said:

"In order for the plaintiff to prevail in this case, he must prove to you by a preponderance of the evidence, which I will later define, that Mr. Poundstone made the promise plaintiff claims he did; that Mr. Poundstone was duly authorized by the defendant company to bind it by such promise if he in fact made it."

Again near the close of the charge to the jury the court said in substance that if the agreement as to paying the insurance premium was made as alleged

by plaintiff, "and that he (Poundstone) had authority to make such an agreement for the defendant company, then plaintiff is entitled to recover."

It may be admitted, in the absence of testimony to the contrary, that it can be assumed or inferred that Poundstone as a resident manager of defendant's business at Watersmeet had the power to bind defendant as to any and all matters normally pertaining to such business. However, plaintiff's claim of right to recover rests upon the assumption, without any direct testimony in support thereof, that Poundstone as resident manager within the scope of his agency had the right to purchase and bind defendant company to pay for workmen's compensation insurance which covered the employees of a third party— the employees of Kelly. Such authority on the part of Poundstone can no more be inferred from his position as resident manager than it might be inferred that Poundstone had authority to bind his company for the price of trucks sold to Kelly. This defect in plaintiff's proof was urged before the trial court in the motions for directed verdict, in the motion for judgment *non obstante veredicto,* and again in defendant's motion for a new trial. In his latter motion defendant called the court's attention to the fact that in his earlier motions he had assigned as a reason in support thereof, as he did in support of his motion for a new trial:

"That plaintiff has not sustained the burden of proof resting upon him in this case to establish by a preponderance of the evidence that Earl C. Poundstone, defendant's local manager at Watersmeet, Michigan, had authority to bind defendant by the promise alleged by plaintiff to have been made by Mr. Poundstone."

As noted above, one of the grounds urged by defendant on this appeal is that the trial court erred in

denying the motion for a new trial. Defendant's position in this respect is sound, and for that reason decision in the trial court is reversed and a new trial granted. Appellant may have costs of this appeal.

STARR, C. J., and CARR, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.