RONEY *v.* MAZZARA.

1. TRIAL—NONJURY ACTION—WEIGHT OF EVIDENCE.

> In the trial of a nonjury action at law, the trial judge may give to the testimony of each witness such weight as he thinks proper.

2. APPEAL AND ERROR—NONJURY LAW CASE—FINDING OF FACT—EVIDENCE.

> The Supreme Court does not disturb the findings of fact by a judge sitting without a jury unless such findings are against the clear preponderance of the evidence.

3. BROKERS—ORDER TO SELL—RATIFICATION—EVIDENCE.

> Judgment for stockbroker for amount of excess of price paid for stock over price at which it is claimed defendant ordered his stock sold but which he failed to deliver *held*, not against the preponderance of the evidence in nonjury action against claimed seller, where sales thereof in two parcels were confirmed to him 4 days later and he thereafter promised to deliver the stock, since if he had not previously ordered the stock sold, his subsequent conduct ratified such action on the part of plaintiffs.

Appeal from Wayne; Richter (Theodore J.), J. Submitted June 3, 1947. (Docket No. 7, Calendar No. 43,617.) Decided October 13, 1947.

Action by William C. Roney and others, copartners doing business as Wm. C. Roney & Co., a limited partnership, against James Mazzara for amount due plaintiffs when they purchased stock to replace that which defendant failed to deliver. Judgment for plaintiffs. Defendant appeals. Affirmed.

*Clifford M. Toohy,* for plaintiffs.

*Anthony Maiullo* (*Joseph A. Maiullo,* of counsel), for defendant.

CARR, C. J.  For several years past the plaintiffs in this case have been carrying on a general stock brokerage business in the city of Detroit, as copartners, under the name of Wm. C. Roney & Co. On December 1, 1944, defendant Mazzara gave an order to plaintiffs through their customers' man, George Coker, to sell 1,000 shares of Aviation Corporation stock at 5-1/8. The order, which was verbally given, was executed at the designated price on December 20, 1944, the stock being sold on the New York stock exchange in two blocks of 500 shares each.  Confirmations advising defendant of the sales were sent to him and were actually received, according to his testimony, December 24th following.  Defendant did not deliver the stock and plaintiffs, during the period beginning January 12, 1945, and ending February 3d following, purchased 1,000 shares of Aviation Corporation stock on the market at prices ranging from 5-1/2 to 6-1/8 per share. The total cost of stock so purchased in fulfillment of the sale made on December 20, 1944, was $1,127.62 in excess of the price for which defendant's stock was sold.  This suit was brought by plaintiffs to recover the amount stated.

Defendant claimed in his answer to plaintiffs' declaration that the order for the sale of the stock was cancelled by him by verbal notice to Mr. Coker given on December 15, 1944.  In their reply to the answer, plaintiffs denied the cancellation.  In support of the allegations in his pleading defendant testified on the trial that he actually cancelled the order in the manner claimed, his testimony being squarely contradicted in this regard by that of Mr. Coker.  The trial court, after listening to the proofs

and arguments of the parties, determined the issue in favor of the plaintiffs, finding specifically that defendant had not cancelled the order, as claimed by him. The trial judge further indicated in his opinion that, even had such cancellation been made, defendant's conduct subsequent to December 20, 1944, was such as to ratify the sale. Judgment was accordingly entered for plaintiffs in the amount claimed, and defendant has appealed.

Disposition of the case rests on the determination of facts, many of which are in dispute. The trial judge had the advantage of hearing and seeing the witnesses and of noting their demeanor when testifying. He was, in consequence, in a better position than is this Court to weigh the testimony offered by the parties. We have repeatedly held that in cases tried without a jury the trial judge may give to the testimony of each witness such weight as he thinks is proper. In cases of this character this Court does not reverse unless the judgment rendered is against the clear preponderance of the evidence. *Marquette Lumber Co.* v. *Burke,* 308 Mich. 698; *Allen* v. *Kroger Grocery & Baking Co.,* 310 Mich. 134; *Stevenson* v. *Brotherhoods Mutual Benefit,* 312 Mich. 81; *Marion* v. *Savin,* 315 Mich. 448.

It appears from the record that in December, 1944, defendant placed with plaintiffs, through Mr. Coker, an order for the purchase of 200 shares of New York Central stock, the order being executed on or about December 27th, at 22–1/8. Following receipt of the confirmation of this purchase defendant made payment for the stock, and on January 6, 1945, went to plaintiffs' office for the purpose of obtaining the certificates. It is conceded that on this occasion some conversation took place with reference to the delivery by defendant of the Aviation Corporation stock. Plaintiff Roy W. Neil testified

that he inquired concerning the matter, first directing his question to Mr. Coker, and that Mr. Coker, in the presence of defendant, stated the latter would deliver the stock on the following Monday morning, January 8th, and that it would be all right to release the New York Central stock to him. Mr. Neil further testified that he then looked toward defendant and asked him if that was correct and was assured by defendant that the stock in question would be delivered on the following Monday morning. Thereupon the certificates of the New York Central stock were delivered to defendant. Mr. Neil's testimony is corroborated by that of plaintiffs' cashier, Norman Rudolph, and also by the testimony of Mr. Coker. Defendant, however, claimed that when the question was asked as to the delivery of the Aviation Corporation stock he made no answer and Mr. Coker replied in substance as testified by Mr. Neil, without denial or comment of any kind on defendant's part. It is apparently defendant's claim that his attitude on this occasion was prompted by statements made to him by Mr. Coker. It will be noted, however, that his testimony is materially at variance with that of the three witnesses for plaintiffs. In any event it is obvious that one of the plaintiff copartners, and the cashier for the firm were definitely advised, either by defendant or in his behalf, that the stock would be delivered to plaintiffs later. If defendant's claims as to what was said and done are correct the record fails to show any satisfactory explanation for his attitude. If he did not intend at that time to deliver the stock to plaintiffs he could scarcely have failed to realize that he was misleading Mr. Neil and Mr. Rudolph.

Defendant further claimed that when he received the confirmations covering the sale of his Aviation Corporation stock he discussed the matter with Mr. Coker and that the latter told him that he (Coker)

had forgotten to enter the cancellation of the order to sell. This testimony is disputed by that of Mr. Coker, who denied conversations claimed by plaintiff and asserted that defendant promised to bring in the stock. No claim is made on behalf of defendant that he advised any of the plaintiffs, or any of their employees other than Mr. Coker, with reference to the alleged cancellation. As before noted, the issues of fact presented by the contradictory testimony were determined by the trial court in favor of plaintiffs.

On behalf of defendant, emphasis is placed on the variance in one particular between the testimony of Mr. Coker and that given by plaintiff Neil. The latter stated in substance that prior to January 6, 1945, he had been told by Mr. Coker that defendant claimed cancellation of the selling order. Mr. Coker, however, testified that he did not know until January 11th, that defendant was actually making any such claim, and that he did not, in consequence, impart any such information to Mr. Neil prior to that date. It may be noted in this connection that the trial took place on May 2, 1946. The discrepancy in the testimony, as to when Mr. Coker first discussed the matter with Mr. Neil, may well have resulted from failure to recall the precise date of the conversation in question. Attention is also called to the fact that on or before January 11, 1945, Mr. Coker sought to work out an adjustment of the matter between himself and defendant, by giving to the latter his personal note. It appears that the failure of defendant to bring in the stock resulted in some criticism of Mr. Coker on the part of his employers. The record indicates that Mr. Coker, as a customers' man, was expected to procure the stock and his failure to do so jeopardized his employment. Under the circumstances we do not think that Mr. Coker's testimony can be regarded as materially impeached,

either by the testimony of Mr. Neil, above referred to, or by the efforts to work out some arrangement with defendant for the purpose of satisfying the latter and, also, plaintiffs. In this connection it must be borne in mind that defendant's testimony was also impeached in certain particulars. It was squarely contradicted on material matters by plaintiffs' proofs. It is also apparent that his conduct, subsequent to receiving the confirmations of the sale of his stock, and particularly his promise on January 6th to bring in the stock two days later, was not consistent with his claim of cancellation of the selling order.

As before noted, the trial judge in his opinion concluded that if defendant had, as claimed by him, cancelled the selling order, nevertheless the conduct referred to above constituted ratification. Concededly, plaintiffs were acting as agents for defendant in making the sale. A somewhat analogous situation, insofar as the legal principle involved is concerned, was presented in *Sullivan* v. *Bennett*, 261 Mich. 232 (87 A. L. R. 791). There the plaintiff sued the defendants for failure to sell stock in accordance with instructions given. Defendants denied that any selling orders had been placed with them. Plaintiff's testimony on the trial indicated that he knew the sales had not been made in accordance with the directions that he claimed to have given, and that he asked defendants concerning the matter. It further appeared that plaintiff, instead of unequivocally repudiating defendants' failure to follow his instructions, placed subsequent selling orders with defendants, which were executed. In reversing without a new trial a judgment in plaintiff's favor, the court said:

"Under the undisputed facts and as a matter of law, plaintiff ratified the failure of defendants to sell under the order of October 14th, by failing

to repudiate their conduct after knowledge of the breach of his instructions, and by the affirmative act of depositing more stock to the account, whether for sale or margin, thereby consenting to the continuance of the account as it was conducted. The reference on October 17th to the order of the 14th was not a repudiation of the breach of instructions.

"As to the 10 shares, plaintiff knew two days after he deposited them that defendants were selling some of his stock but not the 10 shares. Later he knew the account was being carried as formerly, because he received demands for margin, and, therefore, knew the 10 shares were being carried in the account. He knew the market was falling rapidly, and that if defendants had to account for the stock as of the 17th the loss was increasing. He had not repudiated disobedience of his orders of the 14th. These facts raised the duty of immediate repudiation if he had intended to order the 10 shares sold at once. However, while plaintiff testified that he told defendant Smith to sell the 10 shares, he did not directly say that he ordered immediate sale. The physical facts support defendants' contention that it was agreed that certain other stocks should be sold first with the idea of covering the margin and in the hope that the market would permit the account to stand. Both as a matter of law and of fact, we hold that plaintiff ratified defendants' conduct by failing to repudiate it."

This case is reported in 87 A. L. R. 791, where it is followed by a somewhat extended annotation on the subject. It was also referred to by the circuit court of appeals of the second circuit in *Bennett v. Holland Furnace Co.* (C. C. A.), 116 Fed. (2d) 218, and recognized as declaring the Michigan rule. See, also, *Selected Investments Co.,* v. *Brown,* 288 Mich. 383; *Law* v. *Cross,* 66 U. S. 533 (17 L. Ed. 185). If plaintiffs in the case at bar did not have actual authority to make the sale on December 20, 1944, defendant's subsequent conduct and particu-

larly the promise made by him on January 6, 1945, to Mr. Neil and Mr. Rudolph, justifies the conclusion that, with full knowledge of the facts, he ratified the action of the plaintiffs.

The conclusions reached on the issues above considered render it unnecessary to discuss the question of estoppel to which the trial judge referred in his opinion. On the record before us it can not be said that the evidence in the case preponderates against the judgment from which defendant has appealed. Said judgment is therefore affirmed, with costs to plaintiffs.

Butzel, Bushnell, Sharpe, Boyles, Reid, North, and Dethmers, JJ., concurred.