976 F.2d 733
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
JACK PEDDIE AND ASSOCIATES, INCORPORATED, Plaintiff-Appellant,
v.
ADVANTAGE LIFE PRODUCTS, INCORPORATED, Defendant-Appellee.
 No. 91-1974.
 United States Court of Appeals, Sixth Circuit.
 Sept. 18, 1992.
 
 Before MERRITT, Chief Circuit Judge, ALAN E. NORRIS, Circuit Judge, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff, Jack Peddie and Associates, Incorporated ("Peddie"), appeals the district court's grant of summary judgment to defendant, Advantage Life Products, Incorporated ("Advantage"), in Peddie's breach of contract claim. Peddie acted as a sales representative for Advantage's product and asserts that it was an agent of Advantage and was entitled to commissions on all sales to customers it procured. In granting summary judgment to Advantage, the district court determined that there was no agency or contractual relationship between the parties and therefore no liability.
 
 I.
 
 2
 Advantage is the supplier of a stop-smoking system called CigArrest. On June 15, 1987, Advantage, which had no marketing staff of its own, hired Burns Marketing Group ("Burns") to promote its stop-smoking system. Burns was to be paid ten percent of the net sales price of products sold. In the event of termination, Burns would be entitled to commissions on any orders accepted by Advantage prior to the termination. The agreement stated that Burns was an independent contractor and did not have the power to bind Advantage in any way.
 
 
 3
 Burns used independent sales representatives to sell products in various markets. Since Peddie was a sales representative that specializes in marketing new products to K-Mart, Burns engaged Peddie to market CigArrest to K-Mart, in return for a five-percent commission. The agreement was terminable by either party on thirty-days' notice, but was silent concerning any specific arrangement for payment of commissions in the event of termination.
 
 
 4
 In early 1988, Peddie contacted K-Mart, which agreed to test CigArrest. In late summer, it ordered the product for its stores nationwide. Once K-Mart began ordering CigArrest, Advantage paid commissions to Burns, which in turn paid Peddie.
 
 
 5
 On July 5, 1989, Jack Peddie received a phone call from one of Advantage's officers advising him that Advantage was about to terminate its relationship with Burns. At the officer's suggestion, Peddie prepared and forwarded a letter to Advantage, acknowledging that Peddie knew Burns had been terminated and asking that Peddie be continued as a sales representative for Advantage's products. Advantage then sent Peddie a written sales agreement similar to the Burns/Advantage contract. Peddie did not sign the agreement but continued to act as a sales representative for Advantage's products.
 
 
 6
 On September 8, 1989, Advantage notified Peddie that it would be terminated and paid commissions only on orders from K-Mart that had been invoiced up to the date of termination. Peddie's suit against Advantage sought payment of commissions generated from sales to K-Mart after that date.
 
 II.
 
 7
 Peddie first asserts that Burns was given the authority to hire sub-agents to market CigArrest and that Burns hired it to procure K-Mart as a customer for Advantage and did not limit the duration of its entitlement to commissions. As a sub-agent that procured a new customer for its principal, Peddie claims it is entitled to all future commissions generated from this customer.
 
 
 8
 The district court correctly determined that once Peddie was terminated, it was not entitled to commissions on orders placed after the termination by buyers it acquired during the duration of the Burns/Advantage contract. According to Michigan case law, "whether an agent or broker ... is entitled to commissions on sales made or consummated by [the] principal or by another agent depends upon the intention of the parties and the interpretation of the contract of employment." Reed v. Kurdziel, 89 N.W.2d 479, 483 (Mich.1958); see also Butterfield v. Metal Flow Corp., 462 N.W.2d 815, 818 (Mich.Ct.App.1990). "Unless otherwise agreed, upon the termination of the relationship ... the principal: ... (b) is subject to liability to indemnify the agent for losses resulting ... after such termination from authorized transactions....." Reed, 89 N.W.2d at 484 (emphasis added) (quoting from Restatement of Agency § 451).
 
 
 9
 In the present case, the parties "otherwise agreed." The Burns/Advantage contract specifically provided that it was not a procurement contract. The parties specified that "Advantage agrees to pay [Burns] a commission on sales of the Products to the Trade at a rate of 10% of the net amount of the Advantage invoice on all orders obtained by Agency in Territory during the term of this agreement " (emphasis added) and that "[i]n the event of termination, Agency shall be entitled to the commission ... on all orders accepted by Advantage prior to termination, provided in each case shipment is actually made within the period following notification and preceding termination date and the shipment is paid for."
 
 
 10
 The contract limited Burns' ability to bind Advantage to agreements made by Burns: "[Burns] undertakes to carry out this agreement as an independent contractor. All relationships entered into by [Burns] shall have no power to bind Advantage in any way unless a specific power of attorney is provided for the purpose." The general rule is that an agent cannot bind his principal except within the scope of his agency. Mazanec v. Gogebric Timber & Lumber Co., 20 N.W.2d 832 (Mich.1945).
 
 
 11
 Since the contract specifically limited Advantage's liability for commissions on sales made after termination of the relationship, and Burns had no authority to bind Advantage to any other agreement, Burns did not have the authority to enter into a contract with Peddie that would bind Advantage to pay commissions on sales occurring after termination.
 
 
 12
 In the alternative, Peddie asserts that, since it continued to work as a sales agent for Advantage after Burns' termination, it became Advantage's direct agent. In view of our disposition of Peddie's first issue, it cannot be said that Peddie succeeded to a procurement contract enjoyed by Burns. But Peddie also contends that, since it did not have a contract with Advantage that limited its commissions to sales prior to termination, it is entitled to continuing commissions on the K-Mart account because it was the procuring cause. The fundamental problem with this argument is that, under the circumstances of the relationship among Advantage, Burns, and Peddie, Burns was the procuring cause of the K-Mart account, not Peddie. It was Burns that enjoyed the contractual relationship with Advantage during the period in which K-Mart became a buyer of CigArrest. Peddie may have been the procuring cause for Burns, but at the time K-Mart began purchasing CigArrest, Peddie had no contract or relationship with Advantage. By the time it did have such a direct relationship with Advantage, K-Mart was already a customer.
 
 III.
 
 13
 Because the Burns/Advantage contract was not a procurement contract and Burns could not bind Advantage to a procurement contract with Peddie, and because it was Burns, not Peddie, that was the procuring cause for the K-Mart account with Advantage, we affirm the district court.