**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0028n.06
Filed: January 8, 2008

**No. 06-2360**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **SERVICE SOURCE, INC.**, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellant,* | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| **v.** | ) | DISTRICT OF MICHIGAN |
| | ) | |
| **OFFICE DEPOT, INC.,** | ) | **O P I N I O N** |
| | ) | |
| *Defendant-Appellee.* | ) | |

**BEFORE:** **BATCHELDER, COLE, and GRIFFIN, Circuit Judges.**

**R. GUY COLE, JR., Circuit Judge.** Plaintiff-Appellant Service Source, Inc. sued Office Depot, Inc., stating various contract claims under Michigan law. Service Source appeals from the denial of its motion for summary judgment, the denial of its motion for a new trial, and the jury verdict, in which the jury found that the Office Depot employee who had signed the agreement in issue lacked the authority to bind Office Depot and that Office Depot did not ratify the agreement. For the reasons below, we **AFFIRM**.

**I. BACKGROUND**

**A. Facts**

On July 1, 2000, a predecessor company to Service Source, The Service Source Holding Group LLC of Charlotte, North Carolina ("TSS Charlotte"), entered into a regional sales agreement

with Scott Anderson, who was then a district sales manager for Office Depot's Business Service Division ("BSD"). Under the regional sales agreement, TSS Charlotte representatives were authorized to meet personally with Carolina businesses in an effort to sign them as customers of BSD. Office Depot agreed to pay commissions or "rebates" to TSS Charlotte based on Office Depot's sales to the referrals. This regional service agreement was terminable on 30 days notice without cause and was effective from July 1, 2000, until June 30, 2001.

Service Source, based in Adrian, Michigan, is the surviving company of a December 2000 acquisition of TSS Charlotte. BSD terminated all dealings with Service Source effective June 30, 2001 through its Detroit sales manager, Mark Nowak. Despite this official termination, Anderson and Service Source's president, Louis Meeks, worked together to create the Supply Agreement in August, 2001, retroactively effective to July 1, 2001, which, in addition to many other differences from the regional sales agreement, allowed Service Source to broaden its referral efforts to include telemarketing through a large geographical region. This Supply Agreement is the source of the dispute between the two parties.

Office Depot claims to have learned of the Supply Agreement in November 2001. At this time, Steven Firestone, Office Depot's vice-president of marketing and development, received an unsigned version of the Supply Agreement. Firestone and Brandon Choice, another Office Depot employee, met with Meeks and other Service Source representatives on November 6, 2001, to discuss the Supply Agreement. Service Source claims that at no time during this meeting did Office Depot disavow the Supply Agreement; Office Depot claims that the November 6 meeting was a discussion to determine the circumstances surrounding the Supply Agreement. Choice was put in

charge of investigating the circumstances involving the agreement, and Office Depot continued to accept referrals from Service Source.

On November 27, Office Depot claims that Choice orally advised Meeks that it was rejecting the Supply Agreement based on Anderson's lack of authority to execute it on behalf of Office Depot. This claim is supported by Office Depot's interpretation of Meeks's notes, which were admitted into evidence and were before the jury at trial; Service Source claims that these notes signify that Anderson did have authority to enter the agreement. A termination notice followed that conversation on December 7, 2001.

Firestone met with Service Source again on December 20, 2001. Office Depot claims that this meeting was part of a settlement conversation, while Service Source argues that the meeting was further evidence that the Supply Agreement was a valid contract. Following the meeting, Office Depot sent a letter to Service Source that stated "For Settlement Discussions Only" at the top, describing the parameters of a proposed agreement between the parties in which Office Depot would continue to accept Service Source orders based on the proposed agreement.

Office Depot continued to accept orders from Service Source following this meeting, but Office Depot claims that problems with these orders continued. In a March 13, 2002 letter, Office Depot stated that it was terminating the Supply Agreement in the manner stated in the Agreement. Service Source responded by letter on March 19, objecting to the termination and detailing the referral fees to which it claimed entitlement. Office Depot met with Service Source once more on April 11, 2001, to confirm the termination of any agreement between the parties, and sent a termination letter bearing the same date. Office Depot continued to pay Service Source rebates for

several months, but the payments were made with the reservation that they could be recovered at a later date.

## B. Procedural History

Service Source filed its initial complaint on August 19, 2002. This complaint included claims for breach of contract, tortious interference with advantageous business relationship and expectancy, conversion, unfair competition, unjust enrichment, and a declaratory judgment that the Supply Agreement obligated Office Depot to pay rebates.

On October 15, 2002, Office Depot responded with an answer, affirmative defenses, and a counterclaim. Service Source contends that language in this answer constitutes an admission that the Supply Agreement was a contract between the parties, including language that: "Defendant admits that Exhibit A appears to be a copy of a document entitled Office Depot Supply Agreement. Defendant states that the referenced document speaks for itself . . ." (Joint Appendix "JA" 74.) Office Depot also asserted counterclaims for slander, violation of the Michigan Consumer Protection Act, M.C.L. 445.901, violation of the Michigan Uniform Trade Secrets Act, M.C.L. 445.1901, *et seq.*, unfair competition, and for violation of the Lanham Act, 15 U.S.C. § 1125(a). Service Source claims that these counterclaims also include language constituting an admission of the validity of the contract, including: "After executing the Agreement with The Service Source in July 2001 . . ." and "after repeated discussions with The Service Source to resolve material breaches of the Agreement, Office Depot terminated the Agreement for cause." (JA 90.)

Office Depot filed a Motion for Leave to File its First Amended Counterclaim on May 8, 2003, adding breach of contract to its counterclaim. On July 3, 2003, Office Depot filed an

Amended Motion for Leave to File its First Amended Answer, Affirmative Defenses, and Counterclaim. Office Depot requested leave to amend so that its answers would "comply with facts and circumstances uncovered while proceeding with discovery." (JA 144.) The amendments included additional affirmative defenses, including that Anderson lacked the authority to bind Office Depot to the Supply Agreement. Office Depot asserts that as of July 3, no depositions had been taken and the limited discovery at that point suggested that Anderson lacked authority and Service Source had been aware of Anderson's lack of authority. Magistrate Judge Carlson recommended granting Office Depot's Motion to File its First Amended Counterclaim on July 21, 2003, but found that the Amended Motion was not before him.

Magistrate Judge Whalen then recommended denying Office Depot's Amended Motion for Leave on November 25, 2003. Office Depot filed its objections to the magistrate judge's order on December 10, 2003. On May 27, 2005, the parties filed their Joint Final Pretrial Order ("JFPO"), which included the issue of whether Anderson had apparent or actual authority to bind Office Depot. On September 2, 2005, the district court denied Office Depot's Motion for Reconsideration of the Denial of its Amended Motion to Amend because Office Depot had failed to submit the transcript of the hearing before the magistrate judge. On November 2, when the district court once again ruled on the Motion for Reconsideration, the district judge stated that the magistrate judge's findings were not clearly erroneous, but that the JFPO superseded the earlier pleadings:

> Because the parties have signed the Joint Final Pretrial Order and the Order was entered on September 27, 2005, pursuant to E.D. Mich. LR 16.2(a), the Joint Final Pretrial Order supersedes any "pleadings" and governs the course of trial. Rule 7(a) of the Rules of Civil Procedures states that "a complaint and an answer" are pleadings. Fed. R. Civ. P. 7(a). The Joint Final Pretrial Order sets forth Defendant's

> Issues of Fact to be Litigated which includes whether Mr. Anderson had the authority to act on behalf of Defendant. []    There is, therefore, no need to reconsider the Court's September 2, 2005 Order since the September 27, 2005 Joint Final Pretrial Order supersedes any pleadings and governs the course of the trial.

(JA 1134-35.)  The district court then denied Office Depot's Amended Motion as moot. (*Id.*)

Service Source filed an objection to this Order on November 17, 2005, which was denied by the district court on November 28, 2005.  Service Source requested that the court exclude the four affirmative defenses that did not appear in the original pleadings but did appear in the JFPO.  Service Source cited E.D. Mich. LR 16.2(a) for the proposition that "the Pretrial Order shall not be a vehicle for adding claims or defenses."  In rejecting Service Source's motion, the district court stated that Service Source's Motion for Reconsideration had not been filed within 10 days of its November 2 order as required by E.D. Mich. LR 7.1(g)(1) and that "[n]o response to the motion and no oral argument thereon shall be allowed unless the Court, after filing of the motion, otherwise directs." The Order continued, noting that Local Rule 7.1(g)(3) states that motions for reconsideration

> which merely present the same issues ruled upon by the Court, either expressly or by reasonable implication, shall not be granted.  The movant shall not only demonstrate a palpable defect by which the Court and the parties have been misled but also show that a different disposition of the case must result from a correction.

The district court then ruled that Service Source's arguments regarding Anderson's lack of authority had already been ruled on by the Court "either expressly or by reasonable implication" and that Service Source did not demonstrate "a palpable defect by which the Court and the parties have been misled" or that a different disposition of the case must result.  The district court found that the court had previously "properly cited to E.D. Mich. LR 16.2(a)" regarding superseding of pleadings, and that any argument that the JFPO should not be a vehicle for adding claims and defenses was

waived when Service Source signed the JFPO. The district court found that the other three added defenses complained of in Service Source's Motion for Reconsideration had not been addressed by the Court in the November 2 Order and were therefore not available for reconsideration.

## II. DISCUSSION

Service Source appeals from the denial of its motion for summary judgment, the denial of its motion for a new trial, and the jury verdict. Service Source bases these claims on its belief that, based on the pre-trial record, the jury should not have been permitted to find that there was not a valid contract, arguing that 1) Office Depot's submissions amounted to judicial admissions that Anderson lacked authority; 2) Office Depot did not plead lack of authority as an affirmative defense and therefore should have been barred from introducing that defense in either the JFPO or at trial; and 3) Office Depot failed to promptly disavow the agreement, thus ratifying any agreement and removing the question of authority from the jury's consideration. Service Source also argues that, as a matter of law, because the district court granted summary judgment to Service Source on Office Depot's breach of contract counterclaim, the district court erred in denying summary judgment as to Service Source's wrongful termination claim. Lastly, Service Source argues that the district court erred in denying its motion for a new trial.

### A. Motion for Summary Judgment

Normally, "[w]here summary judgment is denied and the movant subsequently loses after a full trial on the merits, the denial of summary judgment may not be appealed." *See Jarrett v. Epperly*, 896 F.2d 1013, 1016 (6th Cir. 1990). *See also Adam v. J.B. Hunt Transp. In*c., 130 F.3d 219, 231 (6th Cir. 1997); *Locricchio v. Legal Servs. Corp.*, 833 F.2d 1352, 1358 (9th Cir. 1987).

"The record does not reflect that there were any special circumstances warranting review of the district court decision to deny summary judgment prior to trial." *Waller v. Corder*, No. 00-5017, 2000 U.S. App. LEXIS 23987 *4 (6th Cir. 2000). As such, the denial of summary judgment cannot be reviewed.

Service Source argues that this Court can review the denial in this case because the district court erred as a matter of law. We disagree. The statements made by Office Depot in their admissions are not the type that should be considered to be judicial admissions by a court; as such the district court did not err in finding that Office Depot had not admitted that Anderson had authority. *See MacDonald v. GMC*, 110 F.3d 337, 340 (6th Cir. 1997). ("Because of their binding consequences, judicial admissions generally arise only from deliberate voluntary waivers that expressly concede an alleged fact. Considerations of fairness and policy of encouraging judicial admissions require that trial judges be given broad discretion to relieve parties from the consequences of judicial admissions in appropriate cases.") Additionally, because Michigan law does not place the burden of demonstrating no contract on Office Depot, their arguments regarding lack of authority and ratification were proper regardless of whether the changes to the JFPO should have been allowed. *See State ex rel. Attorney Gen. v. Binder*, 356 Mich. 73 (Mich. 1959) (holding that lack of authority is not an affirmative defense that needs to be pleaded by defendants).

Lastly, Service Source is incorrect in arguing that, as a matter of law, the district court erred when it granted summary judgment to Service Source on Office Depot's counterclaim for breach of contract but failed to grant summary judgment to Service Source on its claim that Office Depot wrongfully terminated the contract. In granting summary judgment on Office Depot's counterclaim,

the district court found that "without contractual language relating to the alleged conduct of . . . Service Source, a breach of contract claim [is] not sustainable." (JA 859.) Service Source contends that because the same alleged conduct was asserted by Office Depot in their breach of contract claim and as a defense of their termination for cause, the district court should have granted summary judgment on the wrongful termination claim as well. However, the district court's reason for finding no possibility of material breach was that the contract was too vague to define a material breach. The same cannot be said of the contract with respect to "for cause," a term that was explicitly defined in the agreement and was referred to by the district court when it denied Service Source's motion for summary judgment on the claim. (JA 869-70.) As the district court held, "[g]enuine issues of material fact plainly exist[ed] regarding whether Defendant properly terminated the Supply Agreement." (*Id.*) The denial of summary judgment on this issue is not based on a matter of law and is not reviewable by this court. *See, e.g., McMullen v. Meijer*, *Inc.*, 355 F.3d 485, 489 (6th Cir. 2004) .

**B. Motion for a New Trial**

When reviewing a motion for a new trial, this Court "reviews the denial of a motion for new trial for an abuse of discretion. Like the district court, we must affirm the jury's verdict unless this Court is left with the definite and firm conviction that a mistake resulting in plain injustice has been committed, or . . . [that] the verdict is contrary to all reason." *McCurdy v. Montgomery County, Ohio*, 240 F.3d 512, 517 (6th Cir. 2001) (internal citations and quotation marks omitted). An abuse of discretion occurs when there is "a definite and firm conviction that the trial court committed a clear error of judgment." *Webster v. Edward D. Jones & Co.*, 197 F.3d 815, 818-19 (6th Cir. 1999).

1.      The Joint Final Pretrial Order

In its appeal of both the district court's grant of summary judgment and denial of its new trial motion, Service Source argues that the district court erred in allowing Office Depot to amend the JFPO to include arguments regarding Anderson's lack of authority. However, summary judgment was denied prior to the existence of the JFPO, and thus could not have been at issue during that decision. Therefore, whether the JFPO was erroneously entered is relevant only for purposes of Service Source's motion for a new trial which is reviewed for an abuse of discretion. *E.g. McCurdy*, 240 F.3d at 517.

In this case, Service Source was not disadvantaged by the arguments put forth by Office Depot's in the JFPO. Nearly all of the discovery took place while Office Depot's Amended Motion to add the defenses of authority and ratification was pending. Following the denial of the Amended Motion, Office Depot appealed, thus giving Service Source continued notice that the issues of authority and ratification were before the court. During the summary judgment proceedings, the court and the parties addressed the issue of Anderson's authority as well. Given this procedural background, it was not an abuse of discretion for the district court to find that the provisions of the JFPO properly superseded the pleadings of the parties.

2.      Prompt Disavowal

Service Source argues that "[b]ecause there is no evidence that Office Depot promptly disavowed the Supply Agreement as invalid, it was impermissible for the jury to find that Office Depot did not ratify the Agreement. The district court also erred when it denied Service Source's summary judgment motion and allowed the jury to decide the issue at all." (Service Source Br. 31.)

In support of its assertion of a "prompt disavowal" requirement, Service Source cites *Sullivan v. Bennett*, 261 Mich. 232 (Mich. 1933), which states in part:

> The general relationship of principal and agent, with its reciprocal incidents of good faith, candor, and confidence . . . make it a reasonable rule that the acts of an agent shall be deemed ratified by the principal, unless repudiated by him within a reasonable time after knowledge of the departure.

*Id.* at 236-37. However, the context of the court's comment in *Sullivan* is important. In that case, a shareholder sued stockbrokers for selling stock in a manner different from the instructions given by him. The court concluded that the shareholder was aware of the stockbrokers' actions but placed more orders with the brokers anyways, only complaining of their lack of authority after the market had changed. In that context, the Michigan Supreme Court found that it was unfair for a principal to withhold disapproval or approval of an agent's actions until after receiving the benefits of the action. *Sullivan*, 261 Mich. at 238.

In a later case that cites *Sullivan* with approval, the Michigan Supreme Court states that "[i]f plaintiffs in the case at bar did not have actual authority to make the sale . . . defendant's subsequent conduct and particularly the promise made by him . . . justifies the conclusion that, with full knowledge of the facts, he ratified the action of the plaintiffs." *Roney v. Nazzara*, 319 Mich. 103, 110 (Mich. 1947). Similarly, in *Selected Investments Co. v. Brown*, the Michigan Supreme Court reiterates this principal, stating that "[w]ithout evidence of the actual time which elapsed, without knowledge of surrounding circumstances, with nothing but a passing comment of a defendant from which to judge, we cannot say that the trial court should have found a ratification of the transaction by the plaintiff." 288 Mich. 383, 391 (1939). Although "silence may operate as ratification," *E.*

*Clemens Horst Co. v. Grand Rapids Brewing Co.*, 280 Mich. 49, 54 (1937), there is no rule supporting Service Source's claim that prompt disavowal is required to avoid ratifying the contract.

The district court did not err when it instructed the jury on ratification, as there is no simple prompt disavowal requirement from which the jury should have made their decision. Rather, the issue of ratification was properly a question of fact for the jury based on the totality of the circumstances. *See, e.g.*, *Flats Hots Co. v. Peschke Packing Co.*, 301 Mich. 331 (Mich 1942); *Barber-Greene Co. v. Proksch*, 251 Mich. 329, 332-334 (Mich. 1930). Given this standard, the district court did not abuse its discretion in determining that there were issues of material fact regarding ratification when it denied summary judgment, and did not abuse its discretion in denying Service Source's motion for a new trial on the issue of ratification.

### III.  CONCLUSION

For the reasons above, we **AFFIRM** the judgment of the district court.